h MURRAY, Judge.
Janice Aych appeals the judgment of the trial court rendered in favor of Dr. Mitchell A. Pierce, dismissing her dental malpractice action against him. She assigns as error the trial court’s failure to instruct the jury on La.Rev.Stat. 40:1299.131, relating to informing patients of general risks associated with dental treatment, and to include the issue of informed consent on the jury interrogatory form. Athough we find that the jury should have been charged on Dr. Pierce’s duty under La.Rev.Stat. 40:1299.131, we do not find that the failure to do so precluded its reach *614 ing a verdict based on the law and facts. We, therefore, affirm the judgment of the trial court.
Approximately 17 days after having an abscessed tooth extracted by Dr. Pierce in New Orleans, Ms. Aych suffered a stroke. Following rehabilitation in California, where she had moved prior to the stroke, Ms. Aych returned to New Orleans. She was treated at LSU Medical Center, where she eventually underwent surgery to replace the mitral valve of her heart. It has been determined that the ^stroke and destruction of Ms. Aych’s mitral valve were caused by subacute bacterial endocarditis. Endocarditis is an infection of the heart, generally of a valve. Subacute bacterial endocarditis takes longer to cause damage because the bacteria involved is usually less potent. Acute bacterial endocarditis progresses much more rapidly because the damage causing bacteria is more virile and aggressive. Ms. Aych filed this malpractice action against Dr. Pierce, contending that he deviated from the standard of care by failing to advise her of the dangers tooth extraction posed to someone, such as she, with a heart murmur, and failing to pre-treat her with antibiotics. She alleged that her stroke and the destruction of her mitral valve were caused by Dr. Pierce’s malpractice.
The jury found that Dr. Pierce had not deviated from the appropriate standard of care in his treatment of Ms. Aych. Judgment was entered in accordance with the verdict, dismissing the malpractice action.[1] Ms. Ayeh’s motion for new trial was denied, and this appeal followed.
Ms. Aych argues that the trial court erred when it failed to instruct the jury regarding Dr. Pierce’s duty under La.Rev.Stat. 40:1299.131, dealing with informed consent to dental treatment, and to include a jury interrogatory asking if she had given an informed consent to the tooth extraction.
Dr. Pierce counters that the trial court correctly found that this was not an informed consent case. In addition, he argues that, notwithstanding the jury charge, Ms. Aych failed to satisfy her burden of proving that the extraction performed by him was more probably than not the cause of her illness and related complications.

\ ¿DISCUSSION:

In order to prevail on her claim for damages based on Dr. Pierce’s treatment without informing her of the risks associated with that treatment she had to prove, by a preponderance of the evidence, that Dr. Pierce failed to disclose to her the risk of death, brain damage, quadriplegia, paraplegia, the loss of function of an organ or limb associated with having her tooth extracted, if dentists with training and experience similar to his would have made the disclosure under similar circumstances; that the undisclosed risk occurred; and that a reasonably prudent person in her position would not have had the tooth extraction if properly informed. La.Rev.Stat. 40:1299.131 E.
There is no question that Dr. Pierce did not inform Ms. Aych of either the general risks associated with a tooth extraction or the specific risk that procedure posed for a person with a heart murmur. Dr. Pierce claims that Ms. Aych did not inform him that she had a heart murmur, therefore, he had no reason to inform her of possible complications.
On appeal, counsel for Ms. Aych concedes that she did not inform Dr. Pierce of her heart murmur, but contends that she would have done so had he advised her, as required by La.Rev.Stat. 40:1299.131, of the general risk of death, brain damage, quadriplegia or paraplegia associated with having her tooth extracted. She argues that, had the jury been charged that Dr. Pierce had a statutory duty to disclose all known risks associated with the extraction before he could proceed, it could only have concluded that she would have advised him she had a heart murmur, and been pre-treated with antibiotics.
In response to this argument, Dr. Pierce focuses on his alleged failure to inform Ms. Aych of the specific risks tooth extraction posed for someone with a 14heart murmur. *615 Noting that Ms. Aych’s concession that she did not advise him that she had a heart murmur contradicts her testimony at trial, Dr. Pierce argues that jury found her not to be credible.
Louisiana Revised Statute 40:1299.131 clearly imposes a duty on a dentist to ensure that his patients are informed of certain general risks associated with the treatment they propose to render. The evidence shows that Dr. Pierce breached that duty so that the trial court improperly excluded the requested jury instruction.
However, the mere fact that a court erred in instructing the jury does not, in and of itself, justify our conducting a trial de novo, without first measuring the gravity of the error, and considering the instructions as a whole and the circumstances of the case. Williams v. Golden, 95-2712 (La.App. 4th Cir.7/23/97), 699 So.2d 102, 106; Barnett v. New Orleans Public Service, Inc., 489 So.2d 452 (La.App. 4th Cir.1986). The manifest error standard of appellate review may not be ignored unless the jury charges were so incorrect or inadequate as to preclude its reaching a verdict based on the law and the facts. Brown v. White, 405 So.2d 555 (La. App. 4th Cir.1981).
Our review of the record convinces us that the failure of the trial court to instruct the jury on Dr. Pierce’s statutory duty to inform Ms. Aych of the general risks associated with tooth extraction, based on the circumstances of this case, did not preclude the jury from reaching a verdict based on the facts and law.
On August 7, 1990, Ms. Aych visited Dr. Pierce’s dental office for the purpose of having a tooth pulled. As a first time patient, she was asked to complete an information sheet, which included a medical history section. She checked “no” for heart condition. She also did not report a heart murmur on the line marked “Other.” Ms. Aych claimed that she asked the receptionist if she | sshould check yes for “Heart condition,” because she had a heart murmur, but was told to cheek “no” because heart condition only meant something serious like a" heart attack or heart surgery. She testified that the receptionist did advise her to tell the doctor about the murmur.
Ms. Aych testified that after completing the information sheet, she was shown to the back by someone she thought was the dental hygienist. She claimed that Dr. Pierce asked her if she had any type of heart condition, and she asked him if a heart murmur qualified: He told her that a heart condition would mean something like a heart attack. He then took x-rays, deaderied her moüth with Novocain, and pulled her tooth.
Ms. Aych’s testimony concerning her visit to Dr. Pierce’s office was diametrically opposed to that of Dr. Piérce, his office manager, and his receptionist.
Dunia Gonzales, Dr. Pierce’s receptionist at the time of this incident, testified that if a patient asked her what qualified as a heart condition, she would certainly have included a heart murmur as an example. She knew this was important because her brother has a heart murmur. If Ms. Gonzales was unclear as to whether a patient’s condition should be of concern to the doctor, she would alert the dental assistant by way of a “sticky note.” The assistant would then inquire further of the patient, and attach a “medical alert” sticker to the patient’s file if warranted.
Dr. Pierce testified that his receptionist would not have told Ms. Aych that a heart murmur did not qualify as a heart condition. Additionally, if a patient told his receptionist that she had a heart murmur, the file would have been “red-flagged” and the receptionist would have verbally notified the doctor. Before he_|6\vould begin treatment of a new patient, he would go over their chart, including the medical history, with them. He would specifically ask all patients if they had a heart murmur. He testified that both he and his dental assistant asked Ms. Aych if she had a heart murmur, to which she responded no. Patients with heart murmurs were routinely pre-medieated with six 500 milligram Amoxicillin tablets, and were given three more tablets after the dental procedure.
Finally, Ms. Aych testified that she only received a prescription for pain medication before leaving the office. This was at odds *616 with her pre-trial deposition testimony, in which she testified that she was given a prescription for both pain medication and antibiotics after the extraction.[2] Dr. Pierce testified that he gave Ms. Aych prescriptions for both pain medication and for an antibiotic. He explained that the prescriptions were pre-written, both drugs on one prescription, and that his receptionist would fill in' the patient’s name and he would then sign.
The jury obviously found Dr. Pierce and his staff more credible than Ms. Aych, and did not believe that she told anyone in the office that she had a heart murmur. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly wrong. Housley v. Cerise, 579 So.2d 973, 976 (La.1991). We do not see how the failure to instruct the jury that Dr. Pierce had a duty to tell Ms. Aych of general risks associated with having her tooth pulled would have made her testimony any more believable.
|7In addition, the evidence does not support the conclusion that Ms. Aych carried her burden to show that the treatment by Dr. Pierce caused her stroke and the subsequent mitral valve replacement. The record indicates that Ms. Aych had several types of infections prior to the time of the tooth extraction. She testified that she visited a Dr. Lanier in October of 1989 for an abscessed tooth. He gave her a prescription for antibiotics, but she never returned to have the tooth pulled. That abscessed tooth was the same one treated by Dr. Pierce. Dr. Pierce merely removed the root tips because the crown of the tooth had completely decayed. Ms. Aych also was seen at an emergency room in April of 1990. She had complaints of swelling hands and soreness of the left arm. The day before Ms. Aych saw Dr. Pierce, she was treated by a Dr. Tebbe. She complained of swollen hands, weight loss and stomach pains, and had a low grade fever. Although she denied it at trial, Ms. Aych testified in her pre-trial deposition that she also complained of swollen fingers and legs, which she stated was a continuing problem. Blood work indicated that her white blood cell count was in the high normal range. Finally, after her stroke, but before the mitral valve replacement operation, Ms. Aych was seen at Ochsner Hospital with complaints of swollen hands. She was diagnosed as having tendonitis and given a prescription for Keflex.
Ms. Aych’s treating cardiologist, Dr. Rudolph Weichert, testified that he believed the infection in Ms. Aych’s mouth was the cause of the endocarditis; however, he could not pinpoint when the bacteria was introduced into her bloodstream. He admitted that Ms. Aych could have been introducing bacteria into her bloodstream every time she brushed her teeth.
|8Dr. Pramilla Subramaniam, another cardiologist who treated Ms. Aych, stated that it would be very difficult to say that the dental extraction caused the endocarditis. Based on Dr. Tebbe’s physical examination the day before the extraction, it was apparent that Ms. Aych had some on-going problem with her heart valve. The fever and weight loss she reported that day also indicated an ongoing subacute infection.
Dr. William Petri, the maxillofacial surgeon who removed several teeth and drained several abscesses in Ms. Aych’s mouth just prior to her valve surgery^ testified that the degree of decay in Ms. Aych’s mouth indicated long-term infection. He believed that Ms. Aych’s hand infection, which apparently began in April of 1990, was a much higher risk factor for endocarditis than the single-event tooth extraction.
Dr. Patricia Cook, an expert neurologist called on behalf of Dr. Pierce, testified that she believed the tooth extraction was just one small incident compared with months of Ms. Aych introducing bacteria into her bloodstream through chewing and brushing. She also believed that Ms. Aych’s complaints to Dr. Tebbe on August 6 were consistent with endocarditis.
*617 Dr. John Cook was called by the defense as an expert in cardiology. Based on his review of Ms. Aych’s medical records, he believed that she had endocarditis before her visit to Dr. Pierce. Dr. Cook also stated that there was insufficient time between the tooth extraction and the stroke for the bacteria to grow large enough for a piece of the vegetation to break off and block an artery, as occurred in Ms. Aych’s case.
Dr. Louis Jenard, a dentist who served on the medical review panel, also testified for Dr. Pierce. It was his opinion that Ms. Aych had periodontal disease | along before she saw Dr. Pierce. The root tips Dr. Pierce removed were only being held in by tissue, the bone around the tips was gone. He stated that he could safely say Ms. Aych had been introducing bacteria into her bloodstream on a regular basis every time she chewed.
The only doctor who .testified that she believed it more likely than not that the tooth extraction caused the endocarditis was Dr. Catheryn Fontenot, Ms. Ayeh’s treating internist. Dr. Fontenot admitted that she was not aware of Ms. Aych’s prior history of periodontal disease, hand infections,, fever and malaise.
Because the evidence was overwhelming that the tooth extraction was not the cause of Ms. Aych’s bacterial endocarditis, the evidence would not have supported a verdict in Ms. Aych’s favor even had the jury found that Dr. Pierce deviated from the standard of care in his treatment of her.
The judgment of the trial court, therefore, is affirmed. Each party is to bear its own costs.
AFFIRMED.

. Copies of the completed Jury Interrogatory form and the Judgment of November 6, 1996, were attached to plaintiff’s brief on appeal. Neither of these documents is contained in the original record.

. A private investigator hired by plaintiff testified that the K & B Drugstore in Arabi, Louisiana, where Ms. Aych claimed to have had the prescription filled, only had a record of a prescription for Tylenol # 4, a pain medication. The pharmacist would not release a copy of the prescription to the investigator, but indicated that he would release it to Ms. Aych. Ms. Aych did not obtain a copy.