405 So.2d 555 (1981)
Joseph B. BROWN
v.
Douglas WHITE, et al.
No. 11652.
Court of Appeal of Louisiana, Fourth Circuit.
October 1, 1981.
Rehearing Denied November 20, 1981.
*556 Lawrence D. Wiedemann, Wiedemann & Fransen, New Orleans, for Joseph B. Brown, plaintiff-appellant.
A. R. Christovich, Jr., Christovich & Kearney, New Orleans, for Merritt Singer, Al Odell, and Michael Tolle, defendants-appellees.
Clarence A. Frost, Faris, Ellis, Cutrone, Gilmore & Lautenschlaeger, New Orleans, for Bill Thomson, Bernard Waller, Jr., and Kent Jones, defendants-appellees.
Gerard M. Dillon, Michael R. Daigle, Dillon & Cambre, New Orleans, for defendants-appellees National Drying Machine and Pennsylvania Manufacturers' Association Insurance Co.
Roland J. St. Martin, LaPlace, for Jack Evans, defendant-appellee.
M. Truman Woodward, Jr., James K. Irvin, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, for Douglas White, Manning Riser, James Lillie, William Dove and William Frost, defendants-appellees.
Before REDMANN, SCHOTT and HUGHES, JJ.
HUGHES, Judge.
Joseph B. Brown brought this suit to recover damages for personal injuries sustained while working for the E. I. duPont de Nemours Company. Named as defendants were National Drying Machinery, Inc. and various supervisory personnel employed by duPont. Before trial, duPont intervened seeking recovery of benefits which it paid to plaintiff under the Louisiana Workmen's Compensation Act. After trial, a jury returned a verdict which concluded that only one duPont supervisor, Jack Evans, and National were negligent. Evans' negligence was deemed to be a cause of the accident, but National's negligence was deemed not to be a cause of the accident. The jury also concluded that Joseph Brown was contributorily negligent and that he had assumed the risk of his own injury. A judgment was then entered dismissing the claims of plaintiff and the intervention by duPont, and costs were cast against Brown, Evans, and National. Plaintiff appealed from the adverse *557 judgment and Evans and National answered the appeal.
Plaintiff's allegations of error are as follows. (1) The trial court erred in refusing to charge the jury that contributory negligence is not a bar to recovery in a products liability case. (2) The trial court erred in refusing to charge the jury that an executive officer vested with responsibility for safety is required to exercise a higher degree of care than his subordinate employees. (3) The trial court erred in failing to excuse a juror who became "contaminated" by learning something he should not have heard. (4) The trial court erred in instructing the jury that assumption of risk was a bar to recovery in both the products liability and executive officer actions. (5) The jury's conclusion that the executive officers, with the exception of Jack Evans, were not guilty of negligence is manifestly erroneous. (6) The jury's conclusions that the plaintiff was guilty of contributory negligence is manifestly erroneous. (7) The jury's findings that the negligence of the manufacturer and the supervisory employees of duPont were not proximate causes of the accident are manifestly erroneous. (8) The jury's conclusion that plaintiff assumed the risk connected with the job to which he was assigned is manifestly erroneous. Plaintiff contends that he is owed damages on the amount of $591,129.00 from all of the defendants jointly, recognizing the workmens' compensation lien of duPont Inc. in the amount of $33,263.66.
In answering the appeal defendants contend that there was no error in the jury charge concerning contributory negligence of plaintiff nor in the refusal to charge the jury that the defendants were obliged to observe a higher degree of care than the plaintiff was required to observe for his own safety. Further, defendants contend that the Judge's decision not to remove the disputed juror was proper and within the limits of the discretion of the Court. Evans contends it was error for the jury to find that he was negligent and that his neglect was a proximate cause of the accident.
National Drying Machinery, Inc. argues that the jury erred in finding it negligent because it was not the designer of the blower which injured the plaintiff, but only its manufacturer and because the only defects existing were design defects. National contends that this is not a strict liability situation since the machine was not being used normally, because using a pipe wrench to stop the machine was abnormal use. Finally, National contends that it could not be negligent for failing to foresee that the equipment would be used in such an unsafe manner.

REFUSAL TO EXCUSE A JUROR
Out of the presence of the other jurors and during the trial, the juror said to have been "contaminated" heard that a settlement offer had been made to plaintiff. He reported what he heard to the trial judge. The judge notified counsel and questioned the juror, himself an attorney, out of the presence of the other jurors. The juror assured the judge that he could hear and decide the case impartially in spite of what he had heard and that he had not and would not mention the remarks that he overheard to the other jurors. This juror was told that the remark he heard was not true and that he could not permit it to influence his considerations of the case. The juror was then permitted to resume his duties and the trial went on to its conclusion.
We do not view the reinstatement of this juror as reversible error. We note that the verdict was unanimous and find that there is no evidence to support a conclusion that the subject influenced the other jurors in any fashion. In other cases of alleged bias, where nine unbiased jurors agreed, their verdicts have been allowed to stand. Druilhet v. Comeaux, 317 So.2d 270 (La.App.3rd Cir. 1975), cert. den. 321 So.2d 363 (La. 1975); Blandino v. Brown Erection Co., 341 So.2d 577 (La.App.2d Cir. 1977). Trial judges are vested with wide discretionary powers in determining the capability of jurors and no abuse of that discretion has been established in this case.

*558 THE JURY CHARGES
The appellant contends that serious errors were committed in charging the jury in this case and that these errors led to what plaintiff regards as an erroneous result. There was, however, no contention made that we should remand for a new trial because of these errors. With the case in this posture, the question of whether or not the jury was properly instructed affects the weight that should be given to the jury findings. If the instructions were proper, the judgment should be reversed only for manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973). On the other hand, if the instructions were inadequate or improper, we are required to reach our own factual determinations without regard to the manifest error rule. La.Const.1964, Art. 5, Sec. 10(B); Higgins v. Johnson, 349 So.2d 918 (La.App. 1st Cir. 1977); Bond v. Jack, 387 So.2d 613 (La.App. 3rd Cir. 1980). We would then be bound to render the judgment which we conclude is just, legal and proper upon the record on appeal. La. Code Civ.Proc. Art. 2164.
The trial judge refused to give plaintiff's proposed charge Number 52 which read as follows:
You are instructed that under Louisiana Law, contributory negligence is not a viable defense in a products liability cause of action based on strict liability.
Plaintiff also sought to have the jury instructed that an executive officer has a higher degree of care than his subordinate employees. A portion of the proposed charge bearing on this was given and it read as follows:
The negligence aspect of this case involves a comparison of duties. In considering negligence and contributory negligence in a given situation, the jury should not necessarily demand identical conduct of the plaintiff and the defendants, and varying factors affect what conduct the standard of a reasonable man requires. (From Payton v. Travelers Ins. Co., 373 So.2d 1324 at 1328.)
The portion of the proposed charge that was deleted was intended to immediately follow the material above. It was also taken from Payton, ibid., and read as follows:
In the present case you are entitled to exact a higher degree of care from the supervisory employees who had the responsibility for the safety of the subordinate employees and the responsibility of furnishing the subordinate employees with safe and adequate equipment to perform expected tasks.
In place of the material that was deleted, the trial judge inserted this instruction from Miller v. Employers Mut. Liability Ins. Co., 349 So.2d 1353 (La.App. 2d Cir. 1977):
A workman cannot be supervised at every moment. His responsibility to exercise reasonable care for his own safety and protection is at least equal to that of his supervisory co-employees.
The adequacy of jury instruction by a trial court must be determined in the light of jury instructions as a whole. Higgins v. Johnson, 349 So.2d 918 (La.App. 1st Cir. 1977) writs refused 351 So.2d 161 at 162. Where small portions of the instructions are isolated from the context and are erroneous, error is not necessarily prejudicial. Furthermore, the manifest error standard for appellate review may not be ignored unless the jury charges were so incorrect or so inadequate as to preclude the jury from reaching a verdict based on the law and facts. Bond v. Jack, 387 So.2d 613 (La.App. 3rd Cir. 1980). Thus, on appellate review of a jury trial the mere discovery of an error in the judge's instructions does not of itself justify the appellate court conducting the equivalent of a trial de novo, without first measuring the gravity or degree of error and considering the instructions as a whole and the circumstances of the case.
Within the scope of the errors assigned by plaintiff concerning the jury instructions, only three factual conclusions of the jury could be questioned. The first involves the liability of National Drying Machinery, Inc., the second relates to the jury's finding of contributory negligence on plaintiff's part, and the third relates to the finding of assumption of risk on his part.
*559 With respect to the first, assuming that the instructions on contributory negligence and assumption of risk as to National's liability were inadequate, these errors were harmless. The jury did not reach the contributory negligence issue in reference to the claim against National because they found that National's negligence was not a proximate cause of plaintiff's injury and we agree with that finding.
National Drying Machinery, Inc. manufactured the fan assemblies for duPont according to design specifications provided by duPont. There is no question that a brake mechanism incorporated on the fan shaft could have prevented this accident, but no such mechanism was requested by duPont. The fans had been in use for several years and duPont never complained to National that routine maintenance of the fans or motors caused any problems.
The duPont company was in a position to have and did have knowledge that its maintenance men had problems stopping the windmilling fans if only one fan out of pair was de-energized. National cannot be held responsible for duPont's design and its failure to properly supervise the machine's use and maintenance. A manufacturer is not required to follow a product into the hands of informed consumers in an effort to prevent any and all possible accidents. Dixon v. Gutnecht, 339 So.2d 1285 (La.App. 1st Cir. 1976) cert. den. 342 So.2d 673 (La.1977).
The next error assigned by plaintiff concerning jury instructions relates to the jury's conclusion that plaintiff was contributorily negligent. The specific complaint raised by plaintiff against the charge on contributory negligence is that the trial judge failed to instruct the jury that the degree of care required of an executive officer in determining his negligence is greater than that required of the workman in determining his contributory negligence. Thus, plaintiff insists that his instruction taken from Payton v. Travelers Ins. Co., supra, was required and a mixture of a portion of his requested Payton charge with defendants' requested charge from Miller v. Employers Mut. Liability Ins. Co., supra, constituted reversible error.
Plaintiff's approach to the problem is an oversimplification of the trial judge's duty under LSA-C.C.P. Art. 1792 to charge the jury "on the law applicable to the cause submitted to them." The Payton language selected by plaintiff was from a discussion of negligence on the part of those executive officers as well as contributory negligence on Payton's part in the factual context where Payton was found to have no alternative but to manhandle a heavy engine part with the attendant risk of slipping.
In the instant case, plaintiff took it upon himself to employ a method he already discovered was unworkable and dangerous and he ignored alternative measures available to him. In arriving at the conclusion that plaintiff was contributorily negligent the jury was undoubtedly greatly influenced by the following instruction submitted by defendants from the Miller case and which is quite applicable here:
"In determining whether an employee has been contributorily negligent, you should consider the following factors:
1. Relative knowledge of the danger by the supervising employee and the injured employee;
2. Relative control over the employee's situation;
3. The degree to which the employee's conduct is voluntary on his part;
4. Alternatives available to the employee;
5. Obviousness of the danger; and
6. Relative ability to eliminate the danger."
Under the facts of this case we cannot agree that the trial judge committed reversible error by including the other instruction requested by defendants from Miller, to wit:
"A workman cannot be supervised at every moment. His responsibility to exercise reasonable care for his own safety and protection is at least equal to that of his supervisory co-employees."
Plaintiff's negligence which caused his accident was nothing more than a failure to *560 exercise common sense like the plaintiff in Richards v. Farmers Export Co., 377 So.2d 859 (La.App. 4th Cir. 1979). Degrees of responsibility and care as between employees and supervisors have no application to every single act performed by a workman every single moment of his working day. It is applicable when some pervasive negligence on the part of an executive officer prevents the workman from using his common sense in the performance of a particular chore, but such is not the case here.
This jury made an affirmative decision that plaintiff was guilty of contributory negligence after hearing numerous witnesses over several days of trial. A careful review of the arguments presented to the jury by all counsel demonstrates that the contributory negligence issue was paramount in everyone's mind. A Court of Appeal must exercise great restraint before throwing out a jury verdict on the suggestion that the instructions were so erroneous as to be prejudicial. Invariably, jury instructions, especially those requested by parties, are arguably incorrect, and the loser at trial can usually find some deficiencies in them. But the question is whether the jury was misled to the extent that it was prevented from doing justice. In the instant case this jury was given sufficient instructions to make the decision that plaintiff caused his own accident by plain, garden variety carelessness, and the presence or absence of a paragraph buried deep in the judge's charge reciting some legal abstractions would not change that verdict. Any error was harmless at worst. Thus, we review the facts of the case only to determine if the jury's conclusion that plaintiff was contributorily negligent was manifestly erroneous.
The accident occurred while plaintiff and two co-employees were attempting to repair a fan pulley in the neoprene drying process section of the plant. The neoprene drying process required movement of air around moving neoprene film. This was achieved by situating a number of fans over the drying machinery along the drying line in pairs on opposite sides of the line. The arrangement of fans was such that if one fan in a pair was turned off, the air being moved by the other paired fan would cause the de-energized fan to rotate backwards or "windmill".
Safety rules in effect at the plant required that electrical power be cut off from machinery before repair work commenced. The cut-off switches were supposed to be tagged and locked to insure protection of mechanics working on equipment. The mechanics were not supposed to attempt repairs on moving equipment. In the situation under consideration, the fan would rotate even though its own power was cut off.
On the morning of the accident the plaintiff and two co-employees, Sam Lavigne and Jerry Robertson, were given job assignments by their supervisor and the mechanic foreman, Jack Evans. He instructed the three men to replace a cracked pulley connected to one of the neoprene dryer fan motor shafts. The pulley to be replaced drove a second pulley situated on the fan shaft. The two pulleys were connected by belts. None of the three men in the repair team had experience in stopping a windmilling fan.
After the work assignments were handed out, Lavigne and Robertson informed the plaintiff that they had to go to the plant doctor's office for physical exams. Since it appeared that Lavigne would be back before Robertson, Brown elected then to go ahead and get things ready to begin the repair project and to wait for Lavigne's return before actually starting. Brown's first step in getting things ready to start work was to see a Mr. Lavourette who was the production foreman and in charge of the moving neoprene drying line. Since Brown did not know where the electrical cut-off switches were located, Lavourette took him to the switch box where Lavourette cut off the power to the one fan to be repaired and the two men tagged and locked the switch according to established procedures. Lavourette then escorted Brown to the fan where Brown first noticed that it was still turning. Then Lavourette left Brown alone with the machine. Brown *561 returned to the shop area where he ran into some other mechanics whom he asked what tools were needed. Brown testified that a Mr. Boudreaux and a Mr. Marcel told him that he needed a pipe wrench and a wheel puller. However, they testified that they told him that he also needed a pry bar to stop the windmilling fan. Brown testified that he asked them if he was to use the pipe wrench to stop the fan and according to Brown, they told him "Yes, that was the way everybody did it". Brown then took the wheel puller and the pipe wrench back to the fan and waited for Lavigne to come back from the medical department.
When Lavigne and Brown started to replace the defective motor pulley, Lavigne removed the fan belt guards. Then, plaintiff attempted to stop the rotation of the moving blower by applying friction against the outside faces of the belts by pressing a 24 inch pipe wrench against them. Plaintiff made several unsuccessful attempts to stop the rotation in this manner, but he was unable to stop the shaft and the belts. He could only slow down the equipment.
After several unsuccessful attempts had been made, Lavigne suggested throwing a wrench into the sprocket. Brown responded, "Let me do it one more time". During this final attempt to stop the equipment, the pipe wrench somehow got caught in the fan belts and the wrench was propelled upward striking plaintiff in the face. The forces involved were sufficient to knock plaintiff upward and backward and to cause multiple facial fractures that required extensive surgery and hospitalization.
Brown testified that when he first went up to the fan's location he thought that the situation looked dangerous, but that he could do the job without being hurt. Lavigne's testimony is, for the most part, consistent with that of Mr. Brown. Lavigne said that he could see that Brown was not being successful in trying to slow the equipment down with the wrench. He said that Brown told him to ask other mechanics nearby how to stop the belt and they told him that they should try a "pry bar". He testified that while Brown was attempting to slow the machinery down with the wrench, Brown stated "This is a hell of a way to do a job", and Lavigne responded that, "I don't believe that you can stop it like that". He testified that after Brown made the comment, "Let me try it one more time", the wrench slipped out of Brown's hand and "it came up in that belt and it came back at him, it hit him in the jaw. It picked him off the ground about four foot in the air and it leveled him out and he fell on the ground".
The evidence also established that other mechanics including the foreman, Evans, had had difficulty stopping fans such as the one that injured plaintiff on other occasions. They used metal pry bars or sometimes wooden levers to apply leverage and pressure against the fan shaft and thus caused the shaft to stop rotating. Even though it may have been suggested to Brown and Lavigne that they use a pry bar, no other foreman or mechanic experienced in stopping this machinery explained to them how the pry bar process worked.
In this case Mr. Brown acknowledged that he had a great deal of prior experience with machinery. It began when, as a child, he began cutting grass with a power lawn mower and first became aware of the danger of moving belts on machinery. Considering his training and background, we regard Mr. Brown's decision to attempt to stop this windmilling fan with his hands and a wrench as unreasonable conduct. It is unreasonable because the danger was obvious.
The placing of one's hand in moving equipment was held to be unreasonable in Albert v. J & L Engineering, 214 So.2d 212 (La.App. 4th Cir. 1968). In that case Judge Regan stated that for the plaintiff to put his hand inside a sugar harvester was exposure to an obvious danger. He said that danger was open and obvious "just as are a chain and sprocket on a bicycle, the turning blades of a fan or the whirling blades of a reel type lawn mower". An attempt to work on a moving turbine was regarded as exposing one's self to an obvious risk in Pearson v. Hartford Accident & Indemnity *562 Company, 345 So.2d 123 (La.App. 1st Cir. 1977). It is our opinion that there is no significant difference between what Mr. Brown did and what the plaintiffs were doing in the Albert and Pearson cases. See also Richards v. Farmers Export Co., supra.
Having concluded that the jury correctly found plaintiff guilty of contributory negligence we are not obliged to consider the finding that he assumed the risk or his arguments concerning the judge's instructions on this issue.
It is our view that the result obtained in the trial court was correct. However, costs should not have been cast against Evans and National. All costs are taxed against the plaintiff.
AMENDED AND AFFIRMED.