816 So.2d 868 (2002)
Katrina SEAL, et al.,
v.
STATE FARM FIRE & CASUALTY CO., et al.
No. 2000-CA-2375.
Court of Appeal of Louisiana, Fourth Circuit.
March 20, 2002.
Writ Denied June 14, 2002.
*870 Mack E. Barham, Barham & Arceneaux, PLC, and Jerry B. Jordan, The Slater Law Firm, New Orleans, LA, for Plaintiff/Appellant.
David K. Persons, Alayne R. Corcoran, Hailey, McNamara, Hall, Larmann & Papale, L.L.P., Metairie, LA, for Defendant/Appellee.
(Court composed of Chief Judge WILLIAM H. BYRNES III, Judge JOAN BERNARD ARMSTRONG, Judge TERRI F. LOVE).
TERRI F. LOVE, Judge.
Katrina Seal, Plaintiff, appeals the judgment of the trial court, which found her 100% at fault for a fall she suffered on the staircase in her home. The trial court dismissed all claims against the defendants, Donald and Patricia Bird and their insurance provider, State Farm Fire and Casualty Company, with prejudice, at Ms. Seal's cost. For the reasons outlined below, we affirm the jury's finding of fault and the allocation of costs to Ms. Seal.

STATEMENT OF FACTS
This action arises from a fall in the apartment leased by Almon Seal, Jr. and Katrina Seal located at 109 F Kimble Street, Belle Chasse, Louisiana. Donald and Patricia Bird are the owners of the apartment. Ms. Seal fell down the stairway in her apartment on June 27, 1993. There were no witnesses present. She contends that the stairway was defective, and filed suit against the lessors, the Birds, as well as their insurer, asserting causes of action in both negligence and strict liability. Ms. Seal contends that the staircase was too steep, that the stairs were not uniform, and that the Birds did not repair the handrail, which was detached from the wall at the time of her accident. She asserts that the handrail was not installed properly and that the Birds did not respond to her husband's repeated requests to replace the handrail once it became detached from the wall. It is not clear how the handrail became detached. The Birds deny liability and assert that the actual cause of the accident was Ms. Seal's negligence.
The stairway in the apartment had eleven risers and ten steps. The steps were uniformly ten inches wide, but the height of the risers varied. Almon Seal did not ascend the stairs before leasing the apartment. Later he said that he thought they looked steep, but the Seals never complained to the Birds about the condition of the stairs prior to the accident.
Ms. Seal testified that when she fell she had nothing in her hands, and she slipped while stepping on the second step as she descended the stairs. She said that she hit her tailbone on the way down and continued to fall down the stairs until she was about midway on the staircase. She stated that she was unable to walk the rest of the way down the stairs and her children had to help her to the sofa. Ms. Seal *871 was later taken to the emergency room. She asserted that after the fall she had problems walking and urinating. In the coming months Ms. Seal would see a variety of doctors, each prescribing medication without crosschecking with one another. She became depressed about her condition, and the evidence suggests that she developed an addiction to pain medication. Dr. Phillips, an orthopedist, performed an "anterior lumbar fusion" on December 14, 1993, which failed. The physical injuries and depression led Ms. Seal on a continuing downward spiral. In September 19, 1997, Dr. Phillips assigned a twenty-five percent whole body impairment to Katrina Seal.

DISCUSSION

A. Jury Instructions and Interrogatories
Ms. Seal argues in her first assignment of error that the trial court provided the jury with instructions and interrogatories that were so erroneous that the jury was precluded from reaching a just verdict. Ms. Seal requests that we review the matter de novo.
Our review of the record shows that Ms. Seal failed to timely object to the jury instructions and interrogatories at trial. This Court in In Re Asbestos v. Bordelon, Inc., 96-0525, p. 12 (La.App. 4 Cir. 10/21/98), 726 So.2d 926, 940, stated:
In order to preserve an objection to a jury charge for appeal, a party must specifically object at trial and must state reasons for the objection, and a general objection is insufficient. Rule preventing party from assigning jury instruction as error absent a specific objection at trial also applies to jury interrogatories. (Emphasis added) (Internal citations omitted).
Both parties objected generally that their proposed jury instructions and interrogatories were not used. Additionally Ms. Seal's counsel objected in the following manner:
I also want to object to this jury charge that you are about to give in that there was no brackets or screws and in this charge, therefore you can't give a charge that does not at least allow the evidence of the case to match the charge. So I don't know why you're giving that charge.
He continued:
This is part of this charge that talks about the owner if he got advice from someone else, if he acted on that advice... And I don't believe and [sic] owner can circumvent or get out of any liability because of any defense alleging he relied on someone else, it was either strictly liable or negligent or not, he can't use that as a defense.
Clearly these objections are not in conformity with what is required by In Re Asbestos. Aside from the general objection, it is not clear what counsel is objecting to in reference to the jury charges, and there is no clear relationship between the vague objections made at trial to the ones made in this appeal. Ms. Seal's counsel objected again after the jury rendered its verdict, but objections to jury instructions and interrogatories are not valid after the verdict is rendered. See La. C.C.P. art. 1812. Consequently, Ms. Seal is not entitled to review of the jury instructions and interrogatories as it is procedurally barred.
Assuming arguendo that Ms. Seal's objections to the jury instructions and interrogatories were not barred, Ms. Seal nevertheless fails to show that they were so erroneous and prejudicial as to justify a de novo review of this case.
The mere discovery of an error in the instruction does not of itself justify *872 the reviewing court conducting the equivalent of a trial de novo, without first measuring the "gravity or degree of error and considering the instruction as a whole and the circumstances of the case." Brown v. White, 405 So.2d 555, 558 (La.App. 4th Cir.1981). The reason for this standard of review is because a losing party can usually find some deficiencies in the instructions to argue for a reversal. The question to be determined is whether the jury was misled to the extent that it was prevented from dispensing justice. Id. at 560. In considering an argument of improper jury instruction, the court should consider the entirety of the charges and determine if they adequately provide the correct principles of law applicable to the issues as framed by the pleadings and the evidence, and whether they provide adequate guidelines for the jury. Clark v. Jesuit High School of New Orleans, 96-1307, p. 7 (La.App. 4 Cir. 12/27/96), 686 So.2d 998, 1002-03. De novo review is only justified when the jury charges "are so incorrect or so inadequate that the jury was precluded from reaching a verdict based on the law and the facts." Id., at 273-74. Where small portions of the instructions are isolated from the context and are erroneous, error is not necessarily prejudicial. Brown, 405 So.2d at 558.
Using this standard, Ms. Seal is not entitled to a de novo review this matter, as the jury instructions and interrogatories are not so erroneous that the jury was prevented from reaching a just verdict. Therefore the manifest error standard of review will apply. Under the manifest error standard, this Court reviews jury instructions as a whole and in light of the circumstances of the case. Boh Bros. Const. v. Luber-Finer, Inc., 612 So.2d 270, 273 (La.App. 4th Cir.1992).
Ms. Seal argues that the jury instructions and interrogatories failed the legal test set out by this Court in Marchetta ex rel. Marchetta v. CPC of Louisiana, Inc., 99-0485 (La.App. 4 Cir. 3/22/00), 759 So.2d 151, hearing en banc. We disagree. Ms. Seal has failed to prove that the alleged errors she cites in the jury instructions and interrogatories prejudiced the jury against her or otherwise prevented them from reaching a reasonable verdict.
First, Ms. Seal alleges that she did not argue that Mike Garren, the maintenance man, was an employee of the Birds, subject to the principle of respondeat superior. Instead Ms. Seal argues that Mr. Garren "could not possibly have been the `third party at fault for whom the defendants are not answerable' because the missing handrail, which was the only stairway defect Garren was associated with, was not shown to be the cause of Ms. Seal's fall."
That the court put in the jury instruction that the plaintiff contended that Mr. Garren was an employee of the Birds is not prejudicial to the Ms. Seal. Mr. Garren's relationship to the Birds was an issue at trial, so the discussion in the jury instructions was warranted. However, Ms. Seal fails to show, beyond her assertion, how this statement misled or confused the jury.
Second, Ms. Seal argues that the instruction regarding independent contractor or third party fault was irrelevant and misleading because it implied that a third party could have been at fault for Ms. Seal's fall, absolving the Birds of liability. She also argues that the wording of the instruction was in such a way that it would produce a finding that Mr. Garren was an independent contractor. Again Ms. Seal does not show that either the instruction itself or its wording is prejudicial to her.
At trial there was an issue as to whether a third party could have been at fault for *873 the accident, so the instruction is neither misleading nor irrelevant. Furthermore, the trial court properly instructed the jury that third party fault could only be considered if the jury found that the plaintiff had shown by a preponderance of the evidence that the defendants were liable. It is clear from the record that the jury did not reach the issue of third party fault as it found no liability on the part of the Birds. This further shows that this instruction could not have been prejudicial to Ms. Seal.
Third, Ms. Seal claims that the trial court improperly inserted a portion of La. C.C. art. 2322 into the instruction for strict liability. However our review of the record shows that the trial court merely put forth the text of La. C.C. art 2317 and 2322 that differed from each other, namely that article 2317 refers to liability being placed with those entities having custody or "garde" of the thing in question, and article 2322 refers to the liability of an owner of a building, followed by the standard of proof for strict liability that both articles share.
Ms. Seal may be correct in that the wording of this instruction was not perfect. However, we cannot find that this instruction was so poorly written as to amount to reversible error. The standard for strict liability was set out, as was the defining portions of La. C.C. arts. 2317 and 2322. Therefore, this instruction was not so erroneous as to prejudice Ms. Seal.
Fourth, Ms. Seal takes exception to the court's explanation of the term custody or "garde". She argues that the instruction was incomplete. We disagree with this assertion. We further disagree with Ms. Seal that this instruction somehow implied that the Seal's had "garde" of the staircase. We find the trial court's explanation of the term "garde" sufficient and not prejudicial to Ms. Seal in any way.
Fifth, Ms. Seal argues that the inclusion of the instruction regarding lessor/lessee obligations were "superfluous, irrelevant, and immaterial and confused the jury." We find that the instruction was not irrelevant as it was an issue at trial whether or not the Seal's had a duty to fix the handrail. Furthermore, Ms. Seal did not show how this instruction was confusing to the jury or how it prejudiced her, other than to simply state that it did.
Sixth, Ms. Seal argues that the jury was only instructed as to comparative fault and not comparative causation. In Howard v. Allstate Ins. Co., 520 So.2d 715 (La.1988), the Supreme Court discussed the use of comparative fault and comparative causation as it relates to strict liability claims:
La. C.C. art. 2323, which establishes comparative fault, does not apply to the determination of liability; it applies only to the apportionment of damages. The article itself does not define the cases in which the courts should allow a defense of contributory negligence. Courts have discretion in determining when damages are to be apportioned under the statute. This discretion allows the application of comparative fault to a claim previously insusceptible (sic) to the defense of contributory negligence, such as strict products liability or cases arising from art. 2317. The Court conceded that there was a conceptual problem of applying comparative fault to a strict liability case, and that the resolution of these is the principle of comparative causation. Under this principle, the fact finder compares the causal effect of the plaintiff's conduct with that of the defendant's nonnegligent fault. In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the *874 conduct and the damages claimed. Thus, the extent to which each party contributed to the damages should be the measure by which the loss is apportioned.
Id. at 717-18.
The court was correct to include an instruction on comparative fault, as Ms. Seal did assert a cause of action under negligence principles. In the court's instruction on strict liability, the court does state that the defendant can avoid liability if he shows that the harm was caused solely by the fault of the plaintiff. While the court does not use the specific term "comparative causation" and define it, clearly the instructions show that the court contemplated that the jury could assign fault to Ms. Seal on the strict liability claim. However, Ms. Seal fails to demonstrate how this omission prejudiced her. For the jury to consider and assign partial fault to Ms. Seal, the jury would have first had to conclude that Ms. Seal met her burden demonstrating by a preponderance of the evidence that the Birds were strictly liable. The record clearly shows that the jury found that Ms. Seal did not meet her initial burden, making the principle of comparative causation moot. We therefore find that the omission of this instruction was not prejudicial to Ms. Seal.
Finally, Ms. Seal argues that the interrogatories were defective because they did not ask the jury specifically whether or not the stairs were defective. However, the interrogatories only addressed the jury's ultimate conclusions on each issue. Implied in the interrogatory "Do you find the Birds are strictly liable to the plaintiffs?" is the question about the defective nature of the stairs. This was clearly set out in the instructions on strict liability. The jury knew by the instructions that to find the Birds strictly liable they had to find, among other things, that the stairs were defective, i.e. unreasonably dangerous. Ms. Seal further takes issue with the fact that the Birds are mentioned by name in the interrogatories, and argues that strict liability is found by deductive reasoning and that the phrasing and order of the interrogatories prevented this process from occurring. We find that these arguments are completely without merit. The instructions clearly set out the standard for finding strict liability and the interrogatories asked the jury for their ultimate conclusions. These interrogatories were not prejudicial to Ms. Seal.
We find that the jury instructions and interrogatories as a whole were adequate to enable the jury to reach a reasonable verdict and any errors contained therein do not constitute reversible error.

B. Strict Liability and Negligence
Ms. Seal argues in her second assignment of error that based on the evidence, the jury should have found the Birds liable for her injury.
It is well settled that a trial court's findings of fact will not be disturbed unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous. Syrie v. Schilhab, 96-1027 (La.5/20/97), 693 So.2d 1173. If, in light of the record in its entirety, the trial court's findings are reasonable, then the appellate court may not reverse, even if convinced it would have weighed the evidence differently sitting as the trier of fact. Duncan v. Kansas City Southern Railway Co., XXXX-XXXX, p. 6 (La.11/3/00), 773 So.2d 670, 675 (citing Sistler v. Liberty Mutual Ins., Co., 558 So.2d 1106, 1112 (La.1990)). Thus, in order to reverse a trial court's finding of facts, an appellate court must first determine, after reviewing the record in its entirety, that a reasonable factual basis does not exist for the finding and that the *875 record establishes that it is clearly wrong. Mart v. Hill, 505 So.2d 1120 (La.1987).
Ms. Seal failed to meet her burden of proof on both claims of strict liability and negligence. There are two theories of liability available to a plaintiff who claims she was injured as a result of the condition of a thing: negligence, under La. C.C. arts. 2315 and 2316, and strict liability, under La. C.C. art. 2317. Buffinet v. Plaquemines Parish Commission Counsel, 93-0840, p. 4 (La.App. 4 Cir. 7/27/94) 645 So.2d 631, 635. In Buffinet, this Court outlined the standards for negligence and strict liability as follows:
Under both theories of liability a plaintiff must prove that the condition of the thing presented an unreasonable risk of harm, or was defective, and that this condition of the thing was a cause-in-fact of her injuries. Also, under both theories of recovery a plaintiff is required to prove that the thing in question was owned by the defendant and/or that it was in his custody or care and, thus, that the defendant owed the plaintiff or all persons in the general class to which she belongs (i.e., persons who may use or encounter the thing) a duty to keep the thing in a condition such that it will not present an unreasonable risk of harm. In a negligence action the plaintiff must further prove that defendant had actual or constructive knowledge of the risk of harm presented by the condition of the thing and failed to take steps to remedy the condition or to warn persons of its existence. In a strict liability action a plaintiff is relieved of the burden of proving that the defendant knew of the existence of the condition. (internal citations omitted).
Id. at 635-36.
In both negligence and strict liability cases, the reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing. Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980).
Ms. Seal did not present evidence, aside from the stair measurements, that the condition of the stairs was cause-infact of her injury, nor did she show the condition of the stairs posed an unreasonable risk of harm. The Seals never reported the "dangerous" condition of the stairs to the Birds prior to Ms. Seal's accident, despite the fact that their minor children used the stairs daily, which suggests that the Seal's may have considered the stairs to be steep, but not hazardous. Mr. Leibkemann, Ms. Seal's stair expert, testified that although the stairs in question violated the Plaquemines Parish building code, he could not say that the violation was the cause-in-fact of Katrina Seal's fall. Mr. Liebkemann also stated at trial that whether a violation causes a particular fall depends on the facts of each case. Codal requirements are not dispositive of the question of causation. Vigh v. State Farm Fire & Casualty Ins. Co., 97-0381, p. 5 (La.App. 4 Cir. 2/11/98), 706 So.2d 480, 491, on reh'g. He testified that the absence of prior accidents is important in determining whether something is unreasonably dangerous. From the time the apartment was built, there had been no other accidents involving the stair, until Ms. Seal's accident.
Based on the record the jury was reasonable in finding that Ms. Seal had not met her burden of proof under negligence or strict liability. She did not demonstrate that the stairs were unreasonably dangerous or that the condition of the stairs was cause-in-fact of her accident. The jury was reasonable in finding Ms. Seal 100% at fault for her fall.

C. Credibility
There was ample evidence to suggest that the Seals were not credible *876 witnesses. Disbelief of a witness is valid grounds for refusing to consider their testimony in formulating a conclusion of fact. Stroik v. Ponseti, 96-2897 (La.9/9/97) 699 So.2d 1072, 1081. Ms. Seal visited eight different doctors before filing the original complaint, each prescribing medication (mostly for the management of her pain) without conferring with one another. She told each doctor a different version of the accident. The testimony suggests that most if not all of her medical problems stemmed from the unchecked medication she was taking. Dr. Cutrone, who was referred to Ms. Seal by Dr. Jordan, her psychologist, tried to consolidate and manage her medications because she felt like they were causing many of her problems. However, Ms. Seal refused to return to Dr. Cutrone for management. Ms. Seal's pattern of obtaining prescriptions for pain medication from her many doctors suggests drug dependency.
In addition, Dr. Diane Pierce, the Meadowcrest Hospital emergency room physician recorded Ms. Seal's statement when she arrived at the hospital as follows:
25 y/o female c/o fell ½ way down stairs and hit back on stairs.
Prev "pulled back" 20 min prior
Legs got weak on stairs and patient fell c/o burning down post
part entire legs
(Emphasis added)
This language strongly suggests that the cause of Ms. Seal's fall was her own physical impairment and not the condition of the stairs as she contends. At trial, Ms. Seal stated that doctor misinterpreted her statement, however the jury could have reasonably chosen to believe the statement of emergency room doctor taken at the time of the accident over Ms. Seal's attempt to reinterpret the statement at trial.
There is also the issue of the failed fusion performed by Dr. Phillips. The testimony revealed Ms. Seal to be quite ambivalent about the outcome of the surgery. While she was sure that the defendants were responsible for her agony, the fact that Dr. Phillips failed to fuse two vertebrates in her back did not seem to concern her. Though she testified to being in excruciating mental and physical pain, Ms. Seal would travel to New Orleans to "hang out" in the French Quarter with what her husband characterized as a bad crowd. This behavior was a contributing factor in the breakup of their marriage. These issues could have led the jury to believe that Ms. Seal's claims were not credible.
Also, the statements given by Mr. Seal went against his credibility. He testified that he tried to call the Birds several times to alert them to the condition of the handrail. He claims that he left a message for them more than once, but never received a response. However, he never walked over to the rental office to complain to the Birds in person about the handrail, even though the office was only a couple hundred feet away. Lastly, there was ample confusing and conflicting testimony regarding the handrail. It was reattached after the accident. However, it was shown at trial that at the Seal's request, Mr. Garren gave them the materials needed to reattach the handrail weeks before Ms. Seal's fall. But the Seals contend that they left it to the Birds to see that the handrail was fixed.
Based on the record, we find that the jury could have reasonably concluded that the Seals were not credible witnesses.

D. Assignment of Costs
Ms. Seal argues in her final assignment of error that the trial court committed manifest error when it awarded costs to the Birds.
*877 Ms. Seal asserts that the trial court erroneously assigned costs to them, given their alleged poverty, and that it had discretion to assign cost to the Birds. This assertion is incorrect. La. C.C.P. art.1920 states:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
The basic rule is that all costsboth the prevailing side's and his or her own are to be paid by the party cast, although the court may make an "equitable" different provision for costs. Bowman v. New Orleans Public Service, Inc., 410 So.2d 270, 270 (La.App. 4th Cir.1982). The statutory limit to an assessment of costs other than against the party (or parties) cast is that such an assessment must be "equitable." Id.
The assessment of costs against a prevailing party has been considered an abuse of discretion absent proof that the prevailing party has incurred costs pointlessly or engaged in other conduct that justified the assessment of costs against it. Amato v. Office of Commissioner of Securities, 94-0082, p. 12 (La.App. 4 Cir. 10/3/94) 644 So.2d 412, 419 (citing Flair v. Board of Commissioners of Orleans Levee Board, 411 So.2d 614, 618 (La.App. 4th Cir.1982)). Ms. Seal did not put forth any evidence that the Birds incurred unnecessary costs, they only argue that they are in a better position to pay the costs. In Busalacchi v. Vogel, 429 So.2d 217, 223 (La.App. 4th Cir.1983), this Court stated that the proposition that costs can be assessed against the prevailing party as "equity" does not translate "equity" to mean "he pays who can best afford it." There was no mandate here for the trial court to assess costs to the Birds, given its limited discretion. Costs were properly assessed to the Ms. Seal.

D. Damages
Since the jury found the plaintiffs 100% liable for the injuries sustained by Ms. Seal, and we have affirmed that finding, no discussion of damages is warranted.

CONCLUSION
Ms. Seal did not present the evidence required to meet her burden of proof on the merits. Furthermore, she did not present herself as a credible plaintiff. We find ample evidence in the record to support judgment for the Birds. Furthermore, we find no error in the trial court assessing costs against Ms. Seal.
AFFIRMED.