| FIREMAN'S FUND | * | NO. 2019-CA-0621 |
|---|---|---|
| INSURANCE COMPANY, AS | | |
| SUBROGEE OF WILEY | * | |
| VERSTAPPEN AND EVEREST | | COURT OF APPEAL |
| NATIONAL INSURANCE | * | |
| COMPANY, AS SUBROGEE | | FOURTH CIRCUIT |
| OF 714 GIROD CONDO | * | |
| ASSOCIATION | | STATE OF LOUISIANA |

**\* \* \* \* \* \* \***

VERSUS

R.S. HOMES, LLC AND GENE
MORRISON D/B/A SOUTHERN
FLOORING

| **CONSOLIDATED WITH:** | **CONSOLIDATED WITH:** |
|---|---|
| WILEY VERSTAPPEN | NO. 2019-CA-0622 |
| VERSUS | |
| ROBERT SAAVEDRA, R.S. | |
| HOMES, LLC AND XYZ | |
| INSURANCE COMPANY | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2011-09577, DIVISION "B-1"
Honorable Rachael Johnson
\* \* \* \* \* \*
**Judge Tiffany G. Chase**
\* \* \* \* \* \*
(Court composed of Chief Judge James F. McKay, III, Judge Tiffany G. Chase, Judge Dale N. Atkins)

Everett R. Fineran
Jessica A. Roberts
FRILOT L.L.C.
1100 Poydras Street
Suite 3700
New Orleans, LA 70163-3700

COUNSEL FOR PLAINTIFF/APPELLANT

Raymond A. Pelleteri, Jr.
PELLETERI & WIEDORN, L.L.C.
433 Metairie Road, Suite 218
Metairie, LA 70005

Charles S. Green, Jr.
Andrew M. Maestri
BEAHM & GREEN
145 Robert E. Lee Boulevard
Suite 408
New Orleans, LA 70124-2552

COUNSEL FOR DEFENDANTS/APPELLEES

**AFFIRMED**
**MARCH 25, 2020**

*TGC*
*JFM*
*DNA*

Plaintiff, Wiley Verstappen (hereinafter "Ms. Verstappen") appeals the October 26, 2018 judgment of the trial court entering a jury verdict partially in her favor. After consideration of the record before this Court and the applicable law, we affirm the judgment of the trial court.

## Facts and Procedural History

Ms. Verstappen entered into a contract with Robert Saavedra (hereinafter "Mr. Saavedra") and his construction company, R.S. Homes, LLC (hereinafter "R.S. Homes")[1] to perform various construction renovations throughout her condominium. The initial estimated cost of the renovations was approximately $121,733.98. On September 9, 2010, the day prior to the scheduled renovation completion date, a fire occurred at the condominium. The condominium sustained fire, water and smoke damage. Thereafter, Ms. Verstappen hired Crane Builders to repair the damage and complete the condominium renovations. She also filed a

---

[1] For ease of discussion, we will refer to Mr. Saavedra when referencing him in his individual capacity and R.S. Homes when referencing him and his company collectively.

claim with her insurance company, Fireman's Fund Insurance Company, for repairs required as a result of the fire damage.[2]

On September 9, 2011, Ms. Verstappen filed a petition for damages against Mr. Saavedra and R.S. Homes alleging breach of contract, unfair trade practices, negligence, conversion of funds for unauthorized use and breach of fiduciary duty. Mr. Saavedra and R.S. Homes answered the petition on November 17, 2011.

On October 1, 2013, Ms. Verstappen filed a second supplemental and amending petition for damages.[3] She asserted that Mr. Saavedra's negligence caused the fire because he failed to properly remove sawdust material after re-sanding the floor. Mr. Saavedra and R.S. Homes answered the second supplemental and amending petition for damages on November 26, 2013.

A three-day trial began on September 24, 2018, at the conclusion of which the jury returned a verdict partially in Ms. Verstappen's favor. Specifically, the jury found that while R.S. Homes did not breach the contract with Ms. Verstappen, Mr. Saavedra converted funds. The jury awarded Ms. Verstappen $18,546.56 on the conversion claim.[4] It was further found that R.S. Homes' insurance policy with United Fire and Indemnity Company did not provide coverage for conversion, thus the insurance company was not obligated to pay the judgment rendered by the jury.

On November 8, 2018, Ms. Verstappen filed a motion for JNOV or, alternatively, motion for new trial. She maintained that at trial she established that

---

[2] Fireman's Fund Insurance Company paid Ms. Verstappen $300,854.11 for her claim and also filed a subrogation claim against R.S. Homes and Gene Morrison o/b/o of Southern Flooring, the company hired to re-sand the floors. The subrogation claim was ultimately settled.

[3] Ms. Verstappen filed a first supplemental and amending petition for damages on May 3, 2012, adding United Fire and Indemnity Company, R.S. Homes' insurance carrier, as a named party.

[4] The judgment further awarded pre-judgment interest on past damages for a total of $5,412.67 and post-judgment interest at the rate of 5% from the date of judgment until paid.

R.S. Homes breached its contract with her; the jury's finding of conversion was inconsistent with its finding that there was no breach of contract; the jury instruction regarding the independent contractor defense misled the jury; the jury foreperson violated the trial court's instruction by commenting about the case on social media; and one of the jurors slept during substantial portions of the trial.

The motion was heard by the trial court on February 18, 2019, and by judgment dated February 26, 2019, the trial court denied Ms. Verstappen's motion for JNOV and motion for new trial. This appeal followed.

## Standards of Review

This appeal presents multiple issues which requires the application of different standards of review. Thus, for ease of discussion and fluidity of the opinion, we will address the applicable standard of review prior to our analysis of the issues.

Ms. Verstappen's argument as to the independent contractor defense is divided into two issues: (1) Mr. Saavedra should have pled it as an affirmative defense in order to utilize the defense at trial; and (2) improper jury instructions regarding the independent contractor defense. Whether the independent contractor defense is an affirmative defense is a question of fact. *Hyatt v. Mutual of Omaha Ins. Co.*, 2014-0282, p. 14 (La.App. 3 Cir. 10/1/14), 149 So.3d 406, 415. When reviewing questions of fact, we apply a manifest error or clearly wrong standard of review. *Sassone v. Doe*, 2011-1821, pp. 2-3 (La.App. 4 Cir. 5/23/12), 96 So.3d 1243, 1245. We also apply a manifest error standard of review in addressing the

3

jury instructions,[5] *Seal v. State Farm Fire & Cas. Co.*, 2000-2375, pp. 4-5 (La.App. 4 Cir. 3/20/02), 816 So.2d 868, 871-72; the jury's findings, *Rabalais v. Nash*, 2006-0999, p. 4 (La. 3/9/07), 952 So.2d 653, 657; and the motion for JNOV, *Davis v. Wal-Mart Stores, Inc.*, 2000-0445, p. 5 (La. 11/28/00), 774 So.2d 84, 89.

In addressing Mr. Saavedra's testimony regarding his current financial status and juror conduct, we apply an abuse of discretion standard of review. *See Prestwood v. City of Slidell*, 2002-1786, (La.App. 1 Cir. 5/9/03), 849 So.2d 553, 557. *See also West v. Nat'l R.R. Passenger Corp.*, 2003-1707, p. 6 (La.App. 4 Cir. 6/23/04), 879 So.2d 327, 332; *Searle v. Travelers Ins. Co.*, 557 So.2d 321, 323 (La.App. 4 Cir. 1990); *Barnes v. Thames*, 578 So.2d 1155, 1161 (La.App. 1 Cir. 1991).

## Discussion

In the case *sub judice*, the underlying claim revolves around the workmanship of the renovations performed by R.S. Homes. Whether or not R.S. Homes provided defective workmanship to Ms. Verstappen is not germane to our analysis; however, an essential component of her breach of contract claim is the ability to establish poor workmanship. Thus, we must consider the law regarding a contractor's obligation to perform renovations in a workmanlike manner.

In order to prove liability due to defective workmanship, a party must establish: (1) the nature and existence of the defects; (2) that faulty materials or workmanship caused the defects; and (3) the cost associated with the repairs of the defects. *Brenner v. Zaleski*, 2014-1323, p. 5 (La.App. 4 Cir. 6/3/15), 174 So.3d 76,

---

[5] The gravity of the error regarding jury instructions determines the standard of review. *Seal*, 2000-2375, p. 4, 816 So.2d at 872. A *de novo* review is only warranted when the jury charges are so inadequate that the jury cannot reach a verdict based on the facts of the case and the law. *Id.*, p. 5, 816 So.2d at 872. Thus, in the case *sub judice*, we apply a manifest error standard of review.

80. "A contract for work or service carries an implied obligation on the contractor to perform in a workmanlike manner in default of which he must respond in damages for the losses that may ensue." *Gagliano v. Namias*, 479 So.2d 23, 25 (La.App. 4 Cir. 1985). Pursuant to La. C.C. art. 2769 "[i]f an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract." Considering these theories, we now address Ms. Verstappen's challenges on appeal.

Ms. Verstappen asserts multiple assignments of error; however, her arguments can be classified into the following categories: (1) Independent Contractor Defense; (2) Evidence of Mr. Saavedra's current financial status; (3) Jury Findings; (4) Juror Conduct; and (5) JNOV. We will address each in turn.

## Independent Contractor Defense

### *Affirmative Defense*

Ms. Verstappen argues that the trial court erred in allowing R.S. Homes to assert the independent contractor defense when it was not pled as an affirmative defense in the answer.

La. C.C.P. art. 1005 provides:

> The answer shall set forth affirmatively negligence, or fault of the plaintiff and others, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, and any other matter constituting an affirmative defense… .

"Louisiana jurisprudence defines an affirmative defense as a defense that 'raises a new matter, which assuming the allegations in the petition are true, constitutes a defense to the action.'" *Fin & Feather, LLC v. Plaquemines Par.*

5

*Gov't*, 2016-0256, pp. 6-7 (La.App. 4 Cir. 9/28/16), 202 So.3d 1028, 1033 (quoting *Bienvenu v. Allstate Ins. Co.*, 2001-2248, p. 5 (La.App. 4 Cir. 5/8/02), 819 So.2d 1077, 1080). The purpose of the requirement that an affirmative defense must be pled is to give fair notice to the plaintiff and prevent surprise. *Id.* (quoting *Bienvenu*, 2001-2248, p. 6, 819 So.2d at 1080).

Since affirmative defenses raise issues outside of those presented in a plaintiff's petition for damages, it is necessary that it is pled in order to afford the plaintiff an opportunity to adjust its case in light of the new issue raised. *Rider v. Fontenot*, 463 So.2d 951, 956 (La.App. 3 Cir. 1985). The independent contractor defense did not raise issues outside of those presented in Ms. Verstappen's petitions. She alleged issues surrounding the subcontractors and their conduct regarding R.S. Homes' performance. Thus, the independent contractor defense is not an affirmative defense that was required to be specifically pled in R.S. Homes' answer.

Furthermore, even if the independent contractor defense should have been affirmatively pled, the purpose of an affirmative defense is an issue of notice. In its answer to the original petition for damages, R.S. Homes offers that the damages asserted by Ms. Verstappen were caused by a party for whom it is not responsible. Although the answer did not specifically name Southern Flooring, the subcontractor, as the other party, Ms. Verstappen was made aware that R.S. Homes was asserting that another party was responsible for the damage caused by the fire. R.S. Homes' assertion in the answer that a party for whom it holds no responsibility caused the fire, put Ms. Verstappen on notice that it was presenting that defense. Therefore, Ms. Verstappen was notified of the independent contractor defense.

6

### *Jury Instructions*

Ms. Verstappen maintains that the jury instruction regarding the independent contractor defense was misleading. She argues that the trial court did not clarify that the independent contractor defense does not apply to breach of contract claims. The jury instruction, at issue, provided, in pertinent part:

> Generally, the general contractor is not liable for the negligence of an independent contractor who performed work for them, unless the general contractor controlled the work or the work was intrinsically or inherently dangerous.
>
> \*\*\*
>
> If you find that Gene Morrison d/b/a Southern Flooring was an independent contractor, you cannot find R.S. Homes, LLC liable for any negligent work performed by an independent contract.

A trial judge is only required to give a jury instruction which properly reflects the law that is applicable to the facts of a particular case. *Jones v. Liberty Mut. Ins. Co.*, 568 So.2d 1091, 1094 (La.App. 5 Cir. 1990). The law regarding independent contractors provides that principals are not liable for the negligence of independent contractors when the contractors are performing work for the principal. *Bourquard v. L.O. Ausauma Enterprises, Inc.*, 2010-0323, p. 6 (La.App. 4 Cir. 11/17/10), 52 So.3d 248, 253. We find the instruction properly reflects the law. Additionally, Ms. Verstappen acknowledges that she did not object to the jury instruction on the record. It is well-established that a party must specifically object to a jury instruction at trial, and must state the reasons for the objection, in order to preserve the issue for appeal. *Seal*, 2000-2375, p. 3, 816 So.2d at 871 (citing *Asbestos v. Bordelon, Inc.*, 1996-0525, p. 12 (La.App. 4 Cir. 10/21/98), 726 So.2d 926, 940). Thus, the trial court was not manifestly erroneous in submitting the instruction to the jury.

Ms. Verstappen also submits that it was error for the trial court to respond to a juror's question outside the presence of her counsel. The transcript reveals that the jury questioned the law of liability of an independent contractor. In response to the question, the trial judge referred the jury to the law on general contractors and subcontractors, which was contained in Jury Interrogatory No. 27. Generally, it is improper for a trial judge to engage in *ex parte* communication with the jury. *Delo Reyes v. Liberty Mut. Fire Ins. Co.*, 2008-0769, p. 3 (La.App. 4 Cir. 2/18/09), 9 So.3d 890, 892. However, La. C.C.P. art. 1796 provides, in pertinent part:

> A. If the jury, after retiring for deliberation, desires to receive information on any point of law, they shall be conducted to the courtroom.
>
> B. After giving notice to the parties, the court may give the appropriate instructions.

In the case *sub judice*, the trial judge was informed, after the jury began deliberations, that a question was raised. Both parties acknowledge that they were notified by the trial court that the jury had a question. After notifying the parties, the trial judge answered the jury's question, in the courtroom, by referring them to the jury interrogatories. Therefore, we find the trial judge's communication with the jury was not in error and in compliance with La. C.C.P. art. 1796.

### Evidence of Mr. Saavedra's current financial status

Ms. Verstappen submits that evidence was improperly allowed, in violation

of La. C.E. arts. 402 and 403.[6] Specifically, she argues that testimony from Mr. Saavedra that he did not own a vehicle because he could not afford the payments allowed the jury to be sympathetic to his current financial status. She asserts this evidence was not relevant nor did its probative value outweigh its prejudicial effect.

The trial court is allowed discretion when conducting a trial, including when to admit witness testimony. *D.M.S. v. I.D.S.*, 2014-0364, p. 17 (La.App. 4 Cir. 3/4/15), 225 So.3d 1127, 1138 (citing *Cooper v. Lacorte*, 1999-1726, p. 3 (La.App. 4 Cir. 5/17/00), 775 So.2d 4, 7). "The trial court is vested with wide discretion in determining the relevancy of evidence." *Bagwell v. Union Carbide Corp.*, 2019-0414, p. 12 (La.App. 4 Cir. 12/11/19), ___So.3d___,___ (quoting *Palmer v. UV Ins. Risk Rentention Grp., Inc.*, 2018-0404, pp. 11-12 (La.App. 5 Cir. 12/19/18), 262 So.3d 1006, 1015, *writ denied*, 2019-0107 (La. 4/29/19), 268 So.3d 284. "Likewise, the trial court's assessment of the probative value of evidence is afforded great weight." *Id.*

Ms. Verstappen argues that the testimony was unfairly prejudicial. We find this argument meritless. La. C.E. art. 403 requires balancing the probative value of the testimony against unfair prejudice. The entirety of the testimony consisted of Mr. Saavedra testifying that he received a ride to the courthouse because he did not

---

[6] La. C.E. art. 402:
> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation. Evidence which is not relevant is not admissible.

La. C.E. art. 403:
> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.

own a vehicle due to the inability to make the payments. No further testimony was elicited along this line of questioning. Additionally, the record does not reveal any prejudice by this testimony. Thus, because the trial court is granted broad discretion in making evidentiary rulings, we find the decision to admit the testimony was not an abuse of discretion.

## **Jury Findings**

### ***Breach of Contract***

Ms. Verstappen argues the jury erred in finding that R.S. Homes did not breach the contract. She submits that R.S. Homes breached their contract by providing substandard workmanship; delivering a fire damaged property; failing to pay and supervise subcontractors; and Mr. Saavedra falsely claiming to be a general contractor.

In order to establish a breach of contract, a party must prove: (1) the existence of a contract; (2) the party's breach thereof; and (3) damages. *Payphone Connection Plus, Inc. v. Wagners Chef, LLC*, 2019-0181, p. 8 (La.App. 4 Cir. 7/31/19), 276 So.3d 589, 595.

It is undisputed that Ms. Verstappen entered into a contract with R.S. Homes to perform renovations to her condominium. Thus, the issue is whether or not there was a breach of that contract. The jury determined that R.S. Homes did not breach the contract with Ms. Verstappen and a review of the record demonstrates that the jury's findings are reasonably supported. Ms. Verstappen failed to provide sufficient evidence that the work performed by R.S. Homes was substandard. Although she testified that there were certain aspects of the pre-fire renovations that she found unacceptable, Mr. Saavedra testified that she did not previously complain about the workmanship of the renovations. Likewise, Ms. Verstappen did

not establish that R.S. Homes caused the fire. Raymond Hollard, the fire investigator, testified that the actual cause of the fire was undetermined. He testified that the fire could have been caused by sawdust on the floor, a sanding machine or a cigarette butt.

Additionally, Mr. Saavedra testified that he was not properly paying the subcontractors. The jury was given two options on this issue: breach of contract or conversion. The jury found Mr. Saavedra guilty of conversion, thus addressing Ms. Verstappen's claim regarding his failure to pay the subcontractors.

Regarding the claim that Mr. Saavedra held himself out as a general contractor, through his trial testimony, Mr. Saavedra acknowledged that he was not a general contractor. Ms. Verstappen testified that although she inquired into Ms. Saavedra's contractor status, she hired him based on previous work he performed.

The jury weighed the evidence presented and determined that R.S. Homes did not breach the contract with Ms. Verstappen. Based on the record before this Court, the jury's findings are reasonably supported and will not be disturbed upon review.

### *Reimbursement for Repair Expenses*

Ms. Verstappen argues that the jury erred in finding that she was fully reimbursed for the fire repair expenses. She asserts that her insurance company, Fireman's Fund Insurance Company, did not adequately reimburse her for the fire damage repairs. Ms. Verstappen claims $117,555.80 in unreimbursed expenses as a result of the fire. Fireman's Fund Insurance Company paid her $300,884.11 after she submitted documentation to support her claim.

Based on the record before this Court, we find no basis to reverse the jury's finding that Ms. Verstappen was fully compensated for the repairs needed as a

result of the fire. Ms. Verstappen testified that the insurance adjuster advised her to submit all documentation regarding costs for the fire damage repairs. She also testified that she received and accepted a Statement of Loss from Fireman's Fund Insurance Company detailing the amount of the payout for her claim. The acceptance of the Statement of Loss was an acknowledgement that the insurance company fully compensated her for the claim. Therefore, based on the reimbursement amount and the acceptance of the Statement of Loss, the jury could have reasonably concluded that Ms. Verstappen was fully compensated for the cost of the fire damage repairs.

### Juror Conduct

Ms. Verstappen argues the trial court should have declared a mistrial, or ordered a new trial, because of the conduct of two jurors. Specifically, she maintains that a mistrial was warranted because one juror slept through substantial portions of the trial, missing certain details of her testimony. She also asserts that a new trial should have been granted because one juror posted about the sleeping juror on social media.

"Although misconduct of jurors may be a cause for granting a mistrial, the misconduct must be such that it is impossible to proceed to a proper judgment." *Gotch v. Scooby's ASAP Towing, LLC*, 2019-0030, p. 5 (La. 6/26/19), 285 So.3d 459, 463, *reh'g denied*, 2019-00030 (La. 9/6/19), 278 So.3d 365. *See also Boutte v. Kelly*, 2002-2451, p. 26 (La.App. 4 Cir. 9/17/03), 863 So.2d 530, 549. Ms. Verstappen maintains that she was prejudiced because the juror slept through portions of the trial. Ms. Verstappen is tasked with making a clear showing of prejudice, with a possibility of prejudice being insufficient.

12

In the case *sub judice*, the trial court made efforts to ensure that the juror remained awake. The trial court spoke with the juror and provided refreshments to make sure the individual stayed alert during the trial. Additionally, the parties had an opportunity to dismiss the juror and all parties agreed to allow the individual to remain serving as a juror. Ms. Verstappen has not demonstrated how she was prejudiced by the sleeping juror nor has she proven that this conduct made it impossible to proceed to a proper judgment. The record does not reflect any other issues with sleeping jurors throughout the remainder of the trial. Given that Ms. Verstappen had an opportunity to remove the juror, and chose not to, and the great discretion afforded a trial court in determining whether to grant a mistrial, we find that the trial court did not err in declining to declare a mistrial.

Ms. Verstappen also asserts that a new trial should have been granted upon discovery that a juror posted about the trial on social media. She makes the assertion that if the juror posted about the trial, it can be assumed that the juror would discuss the case before the conclusion of the evidence. We find this argument meritless. To warrant a new trial, the newly discovered evidence must be significant enough to potentially affect the outcome of the case. *Washington v. Landry's Seafood House New Orleans, Inc.*, 2014-0128, p. 8 (La.App. 4 Cir. 11/19/14), 154 So.3d 677, 682. "Newly discovered evidence justifies a new trial only if evidence: (1) is discovered after trial; (2) could not, with due diligence, have been discovered before or during the trial; and (3) is not merely cumulative, but instead would tend to change the result of the case." *Id.* at 682-683 (quoting *Jouve v. State Farm Fire and Cas. Co.*, 2010-1522, pp. 15-16 (La.App. 4 Cir. 8/17/11), 74 So.3d 220, 229). Although the social media post was discovered after the trial, it did not contain significant information about the trial and only consisted

of an opinion of the juror about a juror sleeping and the boringness of the trial. Additionally, the post was made during the trial and thus could have been discovered during that time. Furthermore, the post did not contain information that would have changed the result of the case as it did not consist of information pertinent to the matter.

Ms. Verstappen has not demonstrated that she was prejudiced by the jurors' conduct. Based on the record before this Court, Ms. Verstappen has not established that the jurors' conduct was sufficient to warrant a new trial.

### Judgment Notwithstanding the Verdict (JNOV)

Ms. Verstappen seeks review of the trial court's February 26, 2019 judgment denying her motion for JNOV or in the alternative, motion for new trial. Although Ms. Verstappen's brief does not provide the reasons why the JNOV or motion for new trial should have been granted, a review of the record indicates that her motion was based on the assignments of error indicated in this appeal.

"A JNOV is properly granted 'only when the facts and inferences are so strongly and overwhelmingly in favor of one party that the trial judge believes reasonable men could not have arrived at a contrary verdict.'" *Stamps v. Dunham*, 2007-0095, p. 6 (La.App. 4 Cir. 9/19/07), 968 So.2d 739, 744 (quoting *Adams v. Security Ins. Co. of Hartford*, 543 So.2d 480, 486 (La. 1989). A JNOV is appropriate only when the verdict reached by the jury is unsupported by any competent evidence. *Id.* (quoting *Selico v. Intercontinental Bulktank Corp.*, 1998-0763, p. 9 (La.App. 4 Cir. 5/12/99), 733 So.2d 1240, 1245.

The jury's findings were reasonably supported by the evidence. We find the trial court did not err in denying Ms. Verstappen's motion for JNOV and motion for new trial.

## Decree

The judgment of the trial court is affirmed.

**AFFIRMED**