906 So.2d 1282 (2005)
Donna GEORGE, Individually and on Behalf of her Minor Children, Malik and Deundra George, and as Administrator of the Estate of Amesha George
v.
HOUSING AUTHORITY OF NEW ORLEANS and Ashley Companies.
No. 2004-CA-2167.
Court of Appeal of Louisiana, Fourth Circuit.
June 29, 2005.
Rehearing Denied July 22, 2005.
*1284 James A. Gray III, The Gray Law Firm. L.L.C., and James A. Gray II, Gray & Gray, A P.L.C., New Orleans, LA, For Plaintiff/Appellant.
Thomas G. Milazzo, George P. Hebbler, Jr., Pamela B. Gautier, Miranda Warwick Milazzo Giordano & Hebbler, Metairie, LA, for Appellees.
MICHAEL E. KIRBY, Judge.
Plaintiffs appeal the granting of summary judgment in favor of defendant Walter Kidde Portable Equipment, Inc., (hereinafter "Kidde"), a manufacturer of fire alarms. Because plaintiffs failed to carry their burden of proof against Kidde, we affirm.

STATEMENT OF THE FACTS
In 1999, Donna George and her three minor children, Malik, Deundra and Amesha, resided in an apartment owned by the Housing Authority of New Orleans (hereinafter "HANO") in the Desire housing complex. On February 24, 1999, a fire started in the apartment. Upon discovering the fire, Ms. George stated in her affidavit that she attempted to extinguish the fire and when she could not, she attempted to move the burning love-seat out of the apartment's front door. Unable to move the love-seat out the door, Ms. George stated she vacated her apartment and went to a neighbor's apartment door and knocked. She then returned to her apartment to get her children only to discover that the front door from which she escaped was filled with flames and smoke. Upon seeing this, she ran around to the back door but could not get in because the back door was locked.
Ms. George stated that the apartment did not have a sprinkler system, fire extinguisher or fire escape.
Amesha George, who was then five months old, died at Charity Hospital due to complications related to the fire. Malik George, then two years old, suffered severe burns and Deundra, then three years old, allegedly suffered burns.
Plaintiffs filed suit against the HANO, the Ashley Furniture Company and Kidde. As to Kidde, plaintiffs allege that Kidde manufactured a defective smoke alarm which delayed discovery of the fatal fire. Plaintiffs subsequently filed their second supplemental and amending petition naming Pittway Corporation doing business as BRK Electronics (hereinafter "BRK") as a defendant. In the amending pleading, plaintiffs claim that either BRK or Kidde manufactured the allegedly defective smoke alarm.
Kidde moved to dismiss for failure to comply with a consent judgment entered into by both plaintiffs and Kidde on Dec. 17, 2002, which mandated production of evidence of defects regarding the smoke alarm. This was the second consent judgment that was entered into with regard to discovery issues. The consent judgment states that the plaintiffs shall produce expert reports within forty-five days setting forth the alleged liability of Kidde after Kidde produced the Underwriters Laboratory (hereinafter "UL") file in this matter. Kidde produced the UL file relating to the model of alarm allegedly at issue to plaintiffs' counsel on December 19, 2002. We find nothing in the record of plaintiffs production of any expert report that would comply with the consent judgment.

*1285 ACTION OF THE TRIAL COURT

Following the tragic fire of February 24, 1999, plaintiffs filed their suit on January 6, 2000. On April 8, 2004, Kidde filed its motion for summary judgment. The trial court conducted a hearing on Kidde's motion for summary judgment on May 21, 2004, and on May 27, 2004, signed a Judgment that granted the same. On June 8, 2004, the trial court issued Reasons for Judgment.
The trial court's Reasons for Judgment stated:
Plaintiffs' claim is based on Louisiana Products Liability Act (LPLA) codified as Louisiana Revised Statutes 9:2800.51 through 2800.59. It establishes exclusive theories of liability against manufacturers for damage caused by their products. La. R.S. 9:2800.52. The claimant must prove by a preponderance of evidence (1) the defendant is the manufacturer of the product; (2) the claimant's damage was proximately caused by a characteristic of the product; (3) this characteristic made the product unreasonably dangerous in construction or composition, in design, because of an inadequate warning or because it does not conform to an express warranty of the manufacturer; and (4) the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else. La. R.S. 9:2800.54.
All of the direct and circumstantial evidence presented by the claimants, when taken as a whole, must exclude other reasonable hypotheses with a fair amount of certainty so that it is more probable than not that the harm was caused by the product defect attributable to the defendant manufacturer, and that no other factor can reasonably be ascribed as the cause. Welton v. Falcon, 341 So.2d 564 (La.App. 4 Cir.1977). [Other citations omitted.]
The Court concludes that there is no factual support for three of the elements of plaintiffs' claims. First, plaintiffs have not satisfied that defendant, Walter Kidde Portable Equipment, Inc. (Kidde) manufactured the smoke alarm in Ms. George's apartment. The smoke alarm at issue was destroyed by the fire in Ms. George's apartment. Plaintiff offers circumstantial evidence in support of its theory that Kidde was the manufacturer of the smoke detector. According to plaintiff, Housing Authority of New Orleans (HANO) purchased Kidde smoke detectors in 1997 and/or 1998. Plaintiff, Donna George testified in her deposition that the smoke detector in her apartment was replaced since that time.
Therefore, plaintiffs seek to draw an inference that Ms. George's smoke detector was manufactured by Kidde. However, Ulis Gaines, who installed many of the smoke detectors in HANO's apartments, identified Purex as another possible manufacturer. In fact, plaintiffs have amended their petition to add BRK as an additional defendant against whom they assert their products liability claim.
Additionally, plaintiffs claim that the lack of bug guards and the failure of the smoke alarm to activate at greater than eighty degrees made Ms. George's smoke detector unreasonably dangerous. However, there is no direct evidence that there were roaches in Ms. George's smoke detector and there is no evidence that the temperature and humidity affected the performance of the detector.
Finally, plaintiffs fail to show that the smoke detector was causally related to plaintiffs' deaths. The evidence shows that Ms. George left her apartment leaving her three children behind. Based upon these facts, the Court finds that no reasonable person could conclude that any alleged defect in plaintiffs' smoke *1286 alarm caused injuries to two of the minor children and death to one.

LEGAL DISCUSSION
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Costello v. Hardy, XXXX-XXXX (La.1/21/04), 864 So.2d 129. A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2); Cardella v. Robinson, 39,663 (La.App. 2 Cir. 5/13/05), 903 So.2d 613.
La. C.C.P. art. 966(C) provides:
(1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. [Emphasis added.]
The initial element a plaintiff must establish pursuant to the LPLA is that there is proximate causation, that is a link between the actions of the manufacturer and the injury causing product. Stahl v. Novartis Pharmaceuticals, Corp., 283 F.3d 254 (5th Cir.2002). Any plaintiff asserting liability for damage caused by a product must prove under the LPLA that: (1) the defendant manufactured the product, (2) the product was unreasonably dangerous for reasonably anticipated use, and (3) the dangerous characteristic of the product existed at the time the product left the manufacturer's control. Bernard v. Ferrellgas, Inc., 96-621 (La.App. 3 Cir. 2/5/97), 689 So.2d 554.
Kidde will not bear the burden of proving the three (3) elements of the LPLA that it raised during the motion for summary judgment, namely that: (a) it manufactured the smoke alarm in question; (b) its smoke alarm was defective; or, (c) it proximately caused the harm at trial. Thus, the burden shifts to the plaintiffs to produce factual support sufficient to establish that they will be able to satisfy their evidentiary burden at trial. We also note that La. R.S. 9:2800.54(D), specifically places the burden of proving the elements of Subsections A, B, and C of 9:2800.54 on the claimant.
Here, the plaintiffs have had greater than two years to present evidence of who manufactured the smoke alarm in question. Through discovery, plaintiffs have narrowed the field of potential fire alarm manufacturers to two: Kidde and the Pittway Corporation (hereinafter "BRK"). Plaintiffs name both manufacturers in their petition and allege that both of their smoke alarms are defective. Because *1287 there was only one smoke alarm present in Ms. George's apartment, which since then has been destroyed by HANO, it appears plaintiffs are seeking to establish market share liability.
Market share liability imposes pro rata liability in the ratio of market share of each manufacturer of a fungible product that is so generic that the individual manufacturer cannot be identified. The key element enabling complainants to recover under the market share theory in a fungible products case is the shift of the burden of proof from the plaintiff to the defendant-manufacturers, requiring them to show that they did not manufacture the offending product. See Sindell v. Abbott Laboratories, 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924 (1980). Here, it appears plaintiffs seek a judgment against Kidde and BRK according to the market share they had in the Desire Housing Project.
While market share liability is recognized by some jurisdictions, we find no Louisiana case law adopting it. Since the adoption of the LPLA, there is one United States Court of Appeals, Fifth Circuit case that interprets the LPLA to exclude the market share liability theory. Jefferson v. Lead Industries Ass'n, Inc., 106 F.3d 1245 (5th Cir.1997), was a products liability action brought against lead paint manufacturers on behalf of an infant who allegedly suffered lead poisoning resulting from exposure to lead paint pigment. In that case, the Federal Court refused to certify to the Louisiana Supreme Court the questions concerning the applicability of market share liability under the LPLA and affirmed the dismissal for failure to state a claim due to plaintiff's inability to identify which of the paint manufacturers actually made the particular lead paint pigment that caused the lead paint poisoning.
Since different smoke alarms by different manufacturers have different qualities, they cannot be deemed fungible[1] products. Thus, we cannot see plaintiffs availing themselves of market share liability. The Bernard case, supra, held that the plaintiff has the burden of proving that the defendant manufactured the product, and this can only be construed as proving a connection between the offending product and its manufacturer. Therefore, under these facts, plaintiffs have failed to carry their burden of proof and we find the trial court did not err in granting summary judgment in favor of Kidde.
Moreover, plaintiffs have failed to produce expert testimony that the alleged Kidde smoke alarm contained a defect. The only testimony in the record about alleged defects comes from a former employee of HANO, Mr. Clifton Jones and an installer for HANO, Mr. Ulis Gaines.
Mr. Ulis Gaines,[2] a general contractor who is city certified to do electrical contracting, received a contract from HANO, 10 to 12 years ago, to install fire alarms in the Desire Housing Project. The name of his company at that time was Gaines Electric and now it is known as MG Electric. Under the questioning by the plaintiffs' counsel, Mr. Gaines stated that he is not an engineer in the design and construction of smoke detectors. He testified that he ran wires from the smoke detectors specified in the HANO bid to the service panels and that the smoke detectors installed *1288 were not battery operated. Everything he did was in accordance with HANO specifications, including the smoke detectors he installed. Mr. Gaines testified that roaches resting on the photo (phylactic) cell of the smoke detector would interfere/prevent proper function of the smoke detectors. Mr. Gaines testified that he and his crew would test the smoke detectors after installation and that the percentage of smoke detectors that were faulty and returned was very small in comparison to the numbers bought and installed. And when a faulty one was discovered, it was returned to the distributor/manufacturer for a new one. When questioned about the brand name of the smoke detectors installed, Mr. Gaines stated "Purex" may have been one. When asked about the specifics of what type of smoke detection device he installed, Mr. Gaines spoke in generalities because he was not sure of which ones were at Desire. When asked about who determined if the plans or specifications were consistent with the code, he stated the engineer in charge made that determination.
Mr. Jones' experience and background is as an employee for HANO in maintenance, project planning and in managerial capacities. Mr. Jones testified that the presence of roach excrement and spider webs could cause malfunction. Nevertheless, in the case of Ms. Donna Marie George, HANO records indicate that she kept her apartment clean and relatively free of vermin and roaches.[3] For the purposes of serving as an expert on smoke detector design and construction, we agree with the trial court that his testimony, without more, does not meet the Daubert and Tassin standards of expert witness testimony.
In Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592-95, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the U.S. Supreme Court laid out the rules governing the admissibility of expert testimony, that it must be relevant and reliably based on scientific grounds. In Tassin v. Sears, Roebuck and Co., 946 F.Supp. 1241 (M.D.La.1996), the United States District Court for the Middle District of Louisiana dealt with the issue of expert testimony in an LPLA action. Tassin found that in the context of engineering testimony on alternative designs in a consumer products liability action, rigid compliance with the Daubert factors for admissibility of scientific testimony is not required if expert's opinions are based on facts, reasonable investigation, and traditional technical/mechanical expertise, and he provides a reasonable link between the information and procedures he uses and the conclusions he reaches.
We found no expert testimony in the record supporting the plaintiffs' allegations in their petition that the hard-wired Kidde smoke alarms did not function in high humidity or temperature. Mr. Jones' and Mr. Gaines' testimony is based upon general experiences they had working in housing projects, not the specifics of Ms. George's apartment. Moreover, neither of them can be deemed scientists or engineers in the field of design and construction of smoke alarms. We need not rule on whether a smoke alarm without a bug guard in a housing project is unreasonably dangerous or that it is an unreasonably anticipated use. Without scientific explanation, tests and bases, we simply find that lay testimony about roaches being present in housing projects and causing fire alarms to malfunction is not sufficient to prove defect under the LPLA under these facts. *1289 For these reasons, the trial court was correct in not deeming their testimony sufficient to overcome plaintiffs' burden of proof.
Insofar as the question of causation is concerned, that point is moot given plaintiffs' inability to identify the manufacturer of Ms. George's smoke alarm coupled with the absence of expert testimony that would show the smoke alarm was unreasonably dangerous.
For the aforementioned reasons, we affirm the granting of summary judgment in favor of Kidde.
AFFIRMED.
MURRAY, J., concurs in the results.
NOTES
[1] Fungible is defined as commercially interchangeable with other property of the same kind (corn and wheat are fungible goods, whereas land is not). Black's Law Dictionary (8th Ed. Thomson/West).
[2] It is this Court's understanding that since his deposition, Mr. Gaines is deceased. We note that he did mention James Mathews as one of his employees who may have supervised the Desire Installation Project.
[3] We do recognize that one apartment may be clean while another apartment maybe infested with roaches that spread outward.