Judge Roland L. Belsome
This lawsuit arises from an accident that occurred on September 22, 2009, when the boom on a Terex AL4000 portable light tower fell and struck the appellee, Kenneth Despaux, on the back of his head at the ConocoPhillips Alliance Refinery in Belle Chase, Louisiana. At the time of the accident, Mr. Despaux was employed by Kellogg, Brown & Root ("KBR") who was the general maintenance contractor at the Conoco refinery. Conoco had leased the light tower from RSC Equipment Rental, Inc. ("RSC"), for the use of Cajun Constructors, Inc. ("Cajun"), another contractor at the refinery.
On September 21, 2009, the day before the accident, Mr. Despaux's KBR work crew, was assigned to replace an underground waterline at the refinery. Unable to complete the work before sundown, KBR Foreman, Pernell LeBlanc, decided to borrow a light tower from Cajun's work site. After moving the tower to KRB's job site, LeBlanc was able to raise the boom in a vertical position but was unable to raise or "telescope" the lights to a higher position. When the work was completed, the light tower was left in the vertical but not fully telescoped position.
The following morning, on September 22, 2009, the KRB crew was ordered to return the light tower to Cajun's work site. Mr. Despaux hitched the tower to a *809 pickup truck and another member, Elden Russ, checked the telescopic pin on the tower boom. At that time, the boom fell down and struck Mr. Despaux on the head.
As a result of the injuries sustained, Mr. Despaux filed suit against Conoco; RSC; its insurer, Liberty Mutual Insurance Company; two employees of RSC, Lynn Hurst and Richard Babin; and Cajun. Plaintiff later amended the petition to add the manufacturer of the tower, Amida Industries, Inc.[1]
After a two-week jury trial, a verdict was returned finding Mr. Despaux 5% at fault and his co-workers 55% at fault for the accident. Additionally, Amida Industries was found 25% at fault and RSC Equipment 15% at fault. In accordance with the verdict, a judgment was rendered as follows: $527,086.25 against Amida Industries, Inc., and $316,252.05 against the RSC Equipment Rental, Inc. Amida moved for a JNOV, which was denied; and this appeal followed.
On appeal, Amida claims that the trial court erred in denying its Motion in Limine to exclude evidence of a 2013 incident and further erred by denying its Motion for Judgment Notwithstanding the Verdict.
Motion in Limine
The trial court has great discretion in its consideration of evidentiary matters such as motions in limine.[2] A ruling on a motion in limine will not be disturbed unless it is determined on appeal that the trial court abused its great discretion.[3] Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. All relevant evidence is generally admissible. La. C.E. art. 402. Nonetheless, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La. C.E. art. 403.
Just prior to this case's first trial date, Mr. Despaux's counsel received information regarding a 2013 incident involving another Terex AL4000 portable light tower. In December of 2013, another accident involving the same make and model of light tower occurred at the same refinery then operated by Phillips 66 Company. In that incident, Daniel Mouton, an employee of Turner Industries, was ordered to get a light tower. The light tower was owned by United Rentals, Inc., which had purchased all of RSC assets. At the time United Rentals had leased the tower to PSC Industrial Services. The light tower was already in a vertical telescoped position when Mouton came upon it. Mouton started to crank the winch to lower the light boom from the vertical position assuming that the "vertical" locking pin was fully engaged. As he was lowering the tower, he experienced a "jerking" motion and the boom fell and hit another piece of equipment.
There was an incident investigation report prepared by Peter Ernst, Phillips 66 Maintenance Supervisor. The light tower *810 model at issue in both 2009 and 2013 accident has one winch that performs two separate functions: raises the mast from the horizontal position and telescopes the mast out vertically. After the 2013 accident, Phillips 66 decided to utilize a model that had two separate winches to manage the separate functions and prohibited the use of single winch light towers at the refinery.
Four of the Defendants, (RSC, Liberty Mutual, Lynn Hurst, and Richard Babin), filed motions in limine to exclude any evidence related to the 2013 light tower incident. The motion came for hearing before the trial court; and, after hearing arguments of counsel, the matter was taken under advisement. Later, the trial court issued a judgment denying the motions in limine and permitted the incident investigation report into evidence. Relying on the criteria set forth in Lee v. K-Mart[4] , the trial court found that the probative value of the challenged evidence outweighed any prejudicial effect it might have.[5] Additionally, the trial court found the incident investigation report was admissible under the business record exception to the hearsay rule.
In Lee, the First Circuit discussed the admissibility and the relevance of other accidents. The court stated that the other incident must be closely related to the accident, injury, or hazard in the current case. Thus, as it pertains to relevance, the court must consider if the accident occurred at substantially the same place and under substantially the same conditions, and it must have been caused by substantially the same or similar defect or danger.[6]
Here, the similarities in the two incidents cannot be denied. The light towers that collapsed were the same model with the same winch system used at the same refinery. In both instances, the equipment was owned and rented by RSC and the witnesses' accounts of the handling of the equipment prior to the collapse are more similar than distinguishable. Lastly, the conclusion of the 2013 incident report that the Terex AL4000 portable light tower should no longer be used on the job site had a probative value that outweighed the prejudicial impact.
Considering that both accidents occurred at the same place, involved the same model of light tower that was on lease from the same equipment rental company, that damage occurred when the boom fell from a vertical position when a crewmember attempted to rotate the boom down, and that the fall may have been caused by a malfunctioning winch and/or locking pin; that the investigation report links the 2009 and 2013 accidents together; and that great discretion is afforded to the trial court in evidentiary matters, the trial court did not errin finding that the 2013 accident was substantially similar and relevant in the present case. As such, the trial court did not abuse its discretion in denying the motion in limine filed by Amida.
Judgment Notwithstanding the Verdict
Amida further appeals the trial court's denial of its motion for a judgment *811 notwithstanding the verdict (JNOV). It is well established that a JNOV is only warranted when the facts and evidence are so overwhelmingly in favor of the moving party that reasonable jurors could not arrive at a contrary verdict.[7] This Court, in Loconte Partners, LLC v. Montgomery and Associates, Inc., set forth the standard of review for the denial of a JNOV stating:
A trial court's authority to overrule a jury's findings and grant a JNOV is limited to situations in which the facts point so strongly in favor of the moving party that the court feels a reasonable jury could not arrive at a contrary verdict. Where two permissible views of the evidence exist, the fact-finder's choice between them cannot be manifestly erroneous. Therefore, a jury's verdict should not be set aside as long as a fair interpretation of the evidence supports it. All reasonable inferences from the evidence are to be construed in the light most favorable to the non-moving party. The trial court's refusal to render a JNOV can only be overturned if it is manifestly erroneous.[8]
Mr. Despaux's claims against Amida arise under the Louisiana Products Liability Act (LPLA).[9] Amida based its motion for JNOV on a lack of sufficient evidence to prove a claim under LPLA. More specifically, Amida maintained that Mr. Despaux failed to carry his burden of proof as to the essential elements of reasonably anticipated use, defective design, and proximate cause. Again, we must determine whether the record supports that the facts and evidence are so strongly and overwhelmingly in favor of Amida that reasonable jurors could not have arrived at a contrary verdict.
The LPLA provides the exclusive theories of liability against manufacturers for damage caused by a characteristic of their product "that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant, another person or entity."[10] La. R.S. 9:2800.54(A) provides four ways in which a product can be deemed unreasonably dangerous: 1) construction or composition; 2) design; 3) inadequate warnings; or 4) failure to conform to an express warranty.[11]
Under the LPLA a plaintiff asserting liability for damage caused by a product must prove that: 1) the defendant manufactured the product; 2) the product was unreasonably dangerous for reasonably anticipated use; and 3) the dangerous characteristic of the product existed at the time the product left the manufacturer's control.[12] " La. R.S. 9:2800.54(D), specifically places the burden of proving the elements of Subsections A, B, and C of 9:2800.54 on the claimant."[13]
The Terex AL4000 portable light tower has a cabinet which encloses the motor, winch, and cable, which are used to raise and lower the mast. The AL4000 is designed *812 with a single internal winch and cable, which are enclosed in a cabinet. The internal braking system includes a pawl[14] and a ratchet socket,[15] which are designed to stop the mast from falling. The pawl and ratchet socket are also concealed in the cabinet.
To raise the mast, the user cranks the winch handle. Once the mast is in a vertical position, a vertical locking pin engages and locks the mast, so that it cannot fall back to a horizontal position. If it is necessary to further extend the mast to raise the lights, the user then pulls out a pin called the telescoping locking pin. The telescoping locking pin is located higher up on the mast from the automatic locking pin. After releasing the telescoping locking pin, the mast can extend to its full height. The process is reversed to lower the mast and return it to a horizontal position.
At trial, Mr. Despaux asserted that he was injured when the light tower collapsed, and the collapse was caused by defects in the product. The defects alleged were a defective vertical locking pin, a defective pawl, spooled cable hidden inside the light tower cabinet, a wallowed out[16] ratchet socket, and a broken winch handle.
The jury found that Mr. Despaux proved that: 1) the light tower was being used as reasonably anticipated at the time of the incident; 2) the light tower was unreasonably dangerous in construction; 3) the light tower was unreasonably dangerous in design; 4) the light tower was not unreasonably dangerous due to inadequate warnings; and 5) the unreasonably dangerous characteristics of the light tower were a proximate cause of Despaux's injuries.
Reasonably Anticipated Use of the Product
Recently, in Marable v. Empire Truck Sales of Louisiana, LLC, this Court set out the standard to be applied when determining "reasonably anticipated use" as follows:
Under the LPLA, a claimant must initially prove that his damages arose from a reasonably anticipated use of the product. La. R.S. 9:2800.54(A). The LPLA defines the term "reasonably anticipated use" as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." La. R.S. 9:2800.53(7). The standard for determining a reasonably anticipated use is an objective one; i.e., an ordinary person in the same or similar circumstances. Peterson v. G.H. Bass and Co., Inc. , 97-2843, p. 5 (La. App. 4 Cir. 5/20/98), 713 So.2d 806, 809. Thus, under the LPLA, a manufacturer is liable only for those uses it should reasonably expect of an ordinary consumer. See Kennedy, John, A Primer on the Louisiana Products Liability Act , 49 La. Law Rev. 565, 586 (1989).[17]
Amida submits that Mr. Despaux failed to prove that he was using the light tower in a reasonably anticipated way and further maintains that the jury's finding in that regard was inconsistent with their other finding that the warnings were sufficient.
*813 More specifically, Amida claims that it could not anticipate that: 1) the light tower would be borrowed by other contractors doing work within the refinery; 2) that a crewmember pulling the vertical locking pin, 3) untrained personnel using the equipment, and 4) the crew using the light tower when it was broken.
The testimony at trial indicated that the light tower collapsed as the KBR crew was preparing to transport the equipment. The light tower was a piece of equipment commonly used around the refinery, and the testimony established that it is common practice on such job sites for equipment to be borrowed and lent among contractors. As for Amida's assertions that the vertical locking pin was removed and that was the cause of the collapse, there was no testimony that supported that the vertical locking pin was removed. The testimony by KBR crewmember Elden Russ was that he pulled the telescoping locking pin, which is located higher on the mast. Amida's expert stated that pulling the telescoping locking pin should not have caused the light tower to collapse. Further, it was established at trial that the operation of the light tower does not require any specific training or licensing; the KBR crew was well within their skill level to be operating and transporting the equipment. Additionally established at trial was that no one on the KBR crew suspected that the light tower was broken.
Lastly, Amida seeks to discredit the jury's finding of reasonably anticipated use by focusing on their finding of adequate warnings. Essentially, Amida argues that the findings are inconsistent in that they contradict one another in a manner that warrants the granting of a JNOV. We disagree.
Relying on the United States Fifth Circuit cases Kampen v. American Isuzu Motors, Inc. and Lockart v. Kobe Steel Ltd., Amida argues that a finding of reasonably anticipated use, while also finding adequate warnings existed is clear error.[18] In Kampen, the plaintiff used a car jack to elevate a car so that he could get underneath and inspect the brakes in direct contravention of the car jack's manufacturer's warning. The car fell on the plaintiff. In Lockart, workers were injured when a pontoon fell. The workers had used an excavator to suspend a heavy pontoon by chaining it to the bucket's teeth in direct violation of the warnings provided in the equipment manual. In both cases, the court found that the warnings were adequate and the violation of the warnings was not a reasonably anticipated use within the meaning of the LPLA.
We find those cases distinguishable because in both cases the products were not being used for their intended purposes. In Kampen, the car jack was not used to change a tire, but rather, used to suspend the car so that the brakes could be examined. Likewise in Lockart, the excavator was being used for something other than excavating. In this case, the light tower was being used for its intended purpose. Further, the warnings that Amida claims were ignored by the KBR crewmembers include the potential danger of releasing the light tower's vertical lock pin with slack in the winch cable, crush hazards posed by a falling boom or mast, and the danger of standing behind the light tower. The jury found that those warnings were adequate to alert a user of those potential dangers but that did not absolve Amida of liability if one of those things occurred due to a defect. Again, Mr. Russ had no contact with the vertical locking pin, only the telescoping locking pin, and the warning of *814 a falling boom is a generic cautionary statement that does not warn of unexpected collapse due to defect. Lastly, the warning to clear all personnel before lowering the light tower was not a warning that was violated by the KBR crewmembers. The testimony at trial was that they were not ready to lower the tower and that when they were, Mr. Despaux would have relocated in compliance with the warning.
Accordingly, on this record, we find that the jury was reasonable in finding that the KBR crewmembers were engaged in a reasonably anticipated use at the time of the accident and that the warnings were adequate to warn of potential dangers.
Unreasonably Dangerous in Design and Constuction
Once the threshold finding of reasonably anticipated use is established, a party claiming that the product is unreasonably dangerous must prove that when the product left the manufacturer's control, 1) there was an alternate design was capable of preventing the claimant's damage; and 2) the risk avoided by the alternative design outweighed the burden of its adoption by the manufacturer, and any adverse effect the alternative design would have had on the product's utility.[19]
In this appeal, Amida argues that Mr. Despaux failed to provide any evidence that would support the jury's finding that the light tower was unreasonable dangerous in design and construction.
The jury was provided testimony from Luke Webber and Jeremy Hoffpauir, both experts in mechanical engineering. The jury was also provided the eyewitness testimony of the crewmembers present at the time of the incident as well as the testimony of Donald Mouton. Mr. Mouton experienced the collapse of the same model light tower in 2013.
At the time of trial, Amida's expert Mr. Webber was employed as a product safety manager for Terex, the entity that owns Amida. He acknowledged that he had not inspected the specific light tower that was involved in the accident any time before or after the accident. He was only provided pictures of the light tower after the accident. He concluded that the tower collapsed because the vertical locking pin was pulled. That fact was contested by Mr. Russ, the KBR crewmember that was preparing the light tower for transport. Mr. Webber also stated that there is a warning that slack in the cable could cause a rapid lowering of the tower, resulting in injury. The jury was told that when there is slack in the line, the tower will begin to lower rapidly and the pawl can become overwhelmed, resulting in the equipment crashing. RSC's expert, also a mechanical engineer, concluded that there must have been slack in the cable. Yet, as Amida's expert recognized, the cable is not visible given the design of the AL4000 as a single winch system with the winch inside a cabinet. The jury further heard that, in 2008, Terex manufactured the RL4000, a safer light tower with a two winch system that has the winch systems on the outside of the machine.
The jury was also informed about the inner workings of the winch system. Basically, the winch handle is attached to the ratchet socket, which engages the shaft of the winch. It is undisputed that the ratchet socket was wallowed out and therefore compromised. The pawl and ratchet socket are necessary integral parts of the light tower which prevents it from falling. Both *815 experts agreed that it would take extensive wear and tear on the equipment to cause the ratchet socket to be wallowed out. However, the evidence indicated that the light tower was relatively new and was primarily used as a generator rather than a light source. Therefore, its main use did not entail raising and lowering the mast or using the winch system at all. The experts also agreed that the accident did not cause the ratchet socket to wallow out.
In Mr. Mouton's testimony, he stated that he and Mr. Despaux worked at the same refinery. In 2013, he was sent to transport a light tower on the refinery grounds. Mr. Mouton discussed how he started to crank the winch to lower the light mast from the vertical position assuming that the automatic vertical locking pin was fully engaged. As he was lowering the tower, he experienced a jerking motion and the boom fell and hit another piece of equipment. The jury was also given evidence on the incident investigation and refinery's response to the equipment failure. There was an incident investigation report prepared by Peter Ernst, Phillips 66 Maintenance Supervisor. The light tower model at issue in both the 2009 and 2013 accidents has one winch that performs two separate functions: raises the mast from the horizontal position and telescopes the mast out vertically. After the 2013 accident, Phillips 66 decided to utilize a model that had two separate winches to manage the separate functions and prohibited the use of single winch light towers at the refinery.
Taking the totality of the evidence presented, the jury had a reasonable basis for its findings regarding the design and construction of the Terex AL4000 portable light tower.
Conclusion
In conclusion, we find no error in the trial court's evidentiary rulings regarding the 2013 accident and report. Additionally, after reviewing all of the evidence presented to the jury and weighing it in the light most favorable to the non-moving party, we cannot find that the trial court erred in denying Amida's JNOV. Accordingly, the judgment in this matter is affirmed.
AFFIRMED

Initially, Terex was named as the defendant, but Amida was eventually substituted.

Cooper v. Pub. Belt R.R., 2002-2051, p. 3 (La.App. 4 Cir. 1/22/03), 839 So.2d 181, 183 (citing Heller v. Nobel Insurance Group , 2000-0261, p. 1 (La. 2/2/00), 753 So.2d 841, 841 ; Furlough v. Union Pacific R.R. Co. , 33,658, p. 7 (La.App. 2 Cir. 8/31/00), 766 So.2d 751, 757 ).

Id. ; see also, Orleans Par. Sch. Bd. v. State, Div. of Admin., Bd. of Supervisors , 2014-0654, p. 9 (La.App. 4 Cir. 1/7/15), 158 So.3d 846, 852.

483 So.2d 609 (La.App. 1st Cir. 1985).

The motions in limine were the subject of a supervisory writ application to this Court, which was denied. Despaux v. RSC Equipment Rental, Inc., et al, unpubl. 2016-0846 (La.App. 4 Cir. 9/12/16).

See also, Jones v. Parish of Jefferson, 98-0659, p. 5 (La.App. 5 Cir. 11/28/95), 665 So.2d 570, 572 (evidence of subsequent accidents is relevant to establish that a thing is defective, provided that the accidents occurred at substantially the same place and under substantially the same conditions and are caused by the same or a similar defect as the accident sued upon).

Marable v. Empire Truck Sales of Louisiana, LLC, 2016-0876, 2016-0877, 2016-0878, p. 13 (La.App. 4 Cir. 6/23/17), 221 So.3d 880, 892 (citing Anderson v. New Orleans Public Service, 583 So.2d 829 (La. 1991) ).

Loconte Partners, LLC v. Montgomery & Assocs., Inc. , 2012-0691, pp. 11-12 (La.App. 4 Cir. 5/15/13), 116 So.3d 904, 911-12 (citations omitted).

La. R.S. 9:2800.52.

La. R.S. 9:2800.52(A).

La. R.S. 9:2800.54(B).

George v. Hous. Auth. of New Orleans , 2004-2167, p. 6 (La.App. 4 Cir. 6/29/05), 906 So.2d 1282, 1286.

Id.

A pawl is a sliding bolt on a machine part that is made to fall into notches of another part so as to permit motion in only one direction. Merriam-Webster Online Dictionary. http://www.merriamwebster.com.

A ratchet is a mechanism that consists of a bar or wheel having inclined teeth into which a pawl drops so that motion can be imparted to the wheel to allow effective motion in one direction only. Id.

The term wallowed out is another expression for a component being stripped.

Marable , 2016-0876, pp. 15-16, 221 So.3d at 893-94.

157 F.3d 306 (5th Cir. 1998), and 989 F.2d 864 (5th Cir. 1993).

Marable, 2016-0876, p.18 (La.App. 4 Cir. 6/23/17), 221 So.3d at 895 (citing La. R.S. 9:2800.56).