PVCA, INC., AND RENOLA
EQUITY FUND II, LLC

\* NO. 2020-CA-0327

\*

VERSUS

COURT OF APPEAL

\*

PACIFIC WEST TD FUND LP,
AND LOUISIANA CITIZENS
PROPERTY INSURANCE
COMPANY FAIR PLAN AND
MAF, INC. DBA
WORLDCLAIM GLOBAL
CLIAMS MANAGEMENT

FOURTH CIRCUIT

\*

\* STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 13-0134, DIVISION "DIVISION D"
Honorable Darren M. Roy
\* \* \* \* \* \*
**Judge Tiffany G. Chase**
\* \* \* \* \* \*

(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge
Tiffany G. Chase)

**JENKINS, J., CONCURS IN THE RESULT**

Richard A. Tonry, II
Raymond Brinson
Brian L. Glorioso
TONRY BRINSON AND GLORIOSO, LLC
245 Pontchartrain Drive
Slidell, LA 70458

  COUNSEL FOR PLAINTIFFS/APPELLEES

Kermit L. Roux, III
Isaac H. Ryan
DEUTSCH KERRIGAN, LLP
755 Magazine Street
New Orleans, LA 70130-3672

  COUNSEL FOR INTERVENOR/APPELLEE

Paul A. Tabary, III
Elizabeth Borne
TABARY AND BORNE, LLC
Three Courthouse Square
Chalmette, LA 70043

    COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**
**JANUARY 20, 2021**

*TGC*
*RML*

Louisiana Citizens Property Insurance Corporation (hereinafter "Louisiana Citizens") appeals the January 13, 2020 judgment of the trial court entering a jury verdict in favor of plaintiffs PVCA, Inc. (hereinafter "PVCA") and Renola Equity Fund II, LLC (hereinafter "Renola"). PVCA, Renola and Pacific West TD Fund, LP[1] (hereinafter "Pacific West") answer Louisiana Citizens' appeal seeking review of the jury's additional property damage and bad faith penalty awards. They also seek attorney's fees and cost for work performed on this appeal. After consideration of the record before this Court and the applicable law, we affirm the judgment of the trial court and deny the relief requested in PVCA, Renola and Pacific West's answer to the appeal.

## FACTS AND PROCEDURAL HISTORY

Renola is the owner of Park View Condominiums, in Chalmette, Louisiana, a complex consisting of four buildings with a total of 71 units. The complex consisted of 13 individual condominium units and 58 rental units. PVCA is the condominium association representing the interest of the owners of the individually sold units. On August 29, 2012, Hurricane Isaac made landfall, causing damage to the complex and surrounding areas. Prior to Hurricane Isaac,

---

[1] Pacific West is Renola's mortgage lender.

1

Renola obtained a commercial wind and hail insurance policy from Louisiana Citizens, with an effective policy period of May 27, 2012 to May 27, 2013, covering the entire complex.

On September 2, 2012, Renola alleged, as a result of Hurricane Isaac, it suffered property damage covered by its Louisiana Citizens' policy. Contemporaneously with reporting the loss, Renola retained WorldClaim Global Claims Management (hereinafter "WorldClaim"), an independent insurance adjuster, to determine the scope of the damage to the complex. Renola submitted estimates of the damage to the property to Louisiana Citizens. However, Louisiana Citizens rejected the estimates maintaining that the damages reflected did not accurately represent the damages caused to the complex by Hurricane Isaac. On January 31, 2013, due to the disrepair of the complex, the St. Bernard Parish Government issued a Hazard Notice to Renola declaring the complex hazardous, condemning it for occupancy due to the saturation of the electrical system which presented a potential fire hazard. As a result, the complex was deemed uninhabitable and all occupants were required to vacate the property.

On February 28, 2013, PVCA and Renola filed a petition for declaratory judgment and damages naming WorldClaim[2], Louisiana Citizens and Pacific West as defendants. PVCA and Renola alleged that Louisiana Citizens failed to adequately adjust and tender payment under the terms of the policy; breached its duty of good faith and fair dealing in adjusting the claim; and asserted a claim for additional property damages, including loss of rental income, due to the delay in adjusting the claim. Pacific West subsequently filed a petition for intervention

---

[2] Renola subsequently voluntarily dismissed WorldClaim from the matter.

asserting a claim to the insurance proceeds.[3] At the conclusion of an eight-day trial, the jury returned a verdict in favor of PVCA and Renola. The jury found that Louisiana Citizens failed to pay damages due under the policy in the amount of $1,143,184.00. The jury also awarded $810,000.00 in loss of rental income and assessed a 50% bad faith penalty against Louisiana Citizens. On January 13, 2020, the trial court issued a judgment in accordance with the jury's verdict. This appeal followed.

## DISCUSSION

Louisiana Citizens asserts multiple assignments of error, which can be summarized as follows: (1) the trial court erred in issuing several erroneous evidentiary rulings; (2) the trial court erred in failing to give certain jury instructions; and (3) the trial court failed to reconcile an inconsistent jury verdict. We will discuss each in turn.

### Evidentiary Rulings

The parties filed multiple motions *in limine* prior to trial. On appeal, Louisiana Citizens asserts the trial court's rulings on two motions *in limine* were in error. First, it argues the trial court erred in granting Renola's motion *in limine* excluding evidence of other lawsuits and settlements between Renola and Pacific West.[4] Louisiana Citizens maintains that the exclusion of this evidence prevented it from associating Renola's underlying financial issues to the current matter.

---

[3] Pacific West alleged that it was the holder of the promissory note executed by Renola. The note being secured by a multiple indebtedness mortgage, in favor of Pacific West, on the Park View Condominiums property. As mortgage holder, Pacific West maintained that it was an additional named insured on Renola's policy with Louisiana Citizens and thus asserted an interest in the outcome of the litigation in the amount of the current debt owed by Renola.

[4] Renola also sought to exclude evidence of the status of the mortgage loan; however, the trial court granted the motion *in limine* only as it related to evidence of prior lawsuits and settlements.

Secondly, Louisiana Citizens asserts the trial court erred in denying its motion *in limine* which sought to exclude the adjustment report produced by WorldClaim, as well as the testimony of Michael Fusco, WorldClaim's representative.[5] Louisiana Citizens argues that both were allowed to be presented to the jury contrary to the law, which prohibits a public adjuster from obtaining a financial interest in insurance proceeds.

A trial court has broad discretion when considering evidentiary matters, including motions *in limine*. *Certain Underwriters at Lloyd's London v. United States Steel Corp.*, 2019-1730, p. 1 (La. 1/28/20), 288 So.3d 120, 121. Thus, we are tasked with determining "whether the trial court abused its great discretion in ruling on a motion *in limine*." *Cooper v. Pub. Belt R.R.*, 2002-2051, p. 3 (La.App. 4 Cir. 1/22/03), 839 So.2d 181, 183.

### *Exclusion of Other Lawsuits*

Louisiana Citizens asserts that evidence of other lawsuits and settlements between Renola and Pacific West are relevant because it establishes Renola's underlying financial situation. "Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Despaux v. RSC Equip. Rental Inc.*, 2017-0765, pp. 2-3 (La.App. 4 Cir. 4/25/18), 246 So.3d 806, 809 (citing La. C.E. art. 401). However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." La. C.E. art. 403.

---

[5] The record reflects the trial court denied the motion *in limine* from the bench on October 31, 2019.

4

Two prior lawsuits were initiated between Renola and Pacific West. Both lawsuits centered around insurance proceeds for a 2009 fire which occurred on a now demolished building within the complex. Louisiana Citizens argues the prior lawsuits are relevant because it demonstrates Renola's history of failing to use insurance proceeds to repair damage to its property and assists in explaining Renola's financial situation at the time of Hurricane Isaac. Additionally, Louisiana Citizens maintains the previous lawsuits undermine the credibility of Renola and Pacific West because they were opposing parties in litigation involving insurance proceeds.

In the case *sub judice*, the basis of Renola's current lawsuit is the extent of damages to its complex as a result of Hurricane Isaac, not a dispute between two named insureds on a policy. The prior lawsuits between Renola and Pacific West are not relevant to the dispute between Louisiana Citizens and Renola on the issue of the contractual obligation regarding the adequacy and timeliness of insurance payments. Furthermore, the prejudicial effect of presenting the jury with evidence of Pacific West and Renola's prior lawsuits, which did not involve Louisiana Citizens' contractual obligation to Renola, outweighs the probative value of the evidence. *See Gurley v. Encompass Ins. Co. Of Am.*, 2007-1477, pp. 3-4 (La.App. 4 Cir. 5/14/08), 985 So.2d 299, 302. Thus, the trial court did not abuse its discretion in excluding the evidence of prior lawsuits and settlements between Renola and Pacific West.

### *WorldClaim Adjustment Report*

Louisiana Citizens argues the trial court erred in allowing evidence from WorldClaim to be admitted because WorldClaim entered into a contingency fee agreement with Renola, which is prohibited under Louisiana law. WorldClaim's

initial contract with Renola provided for a 7.5% fee based on the amount recovered through the insurance claim. Louisiana Citizens asserts that WorldClaim had a vested financial interest in the outcome of this matter which would dictate the scope of damage it alleged to be a result of Hurricane Isaac. Thus, Louisiana Citizens maintains, the WorldClaim adjustment report should not have been admitted into evidence and Mr. Fusco not allowed to testify.

A public adjuster is prohibited from entering into a contract with an insured, which provides for a fee that is contingent upon the amount of any claim paid on behalf of the insured by the insurer. La. R.S. 22:1703(A).[6] However, the record reflects that the parties later amended the contract to provide that WorldClaim would receive a $150,000.00 flat fee instead of a 7.5% contingency fee. Mr. Fusco testified that once he learned the fee was illegal in Louisiana, the parties amended the contract to reflect a flat fee. The initial contract between Renola and WorldClaim was entered into on September 4, 2012; however, at trial Mr. Fusco testified that the contingency fee was amended to a flat fee contract in 2013. Louisiana Citizens' final payment to Renola occurred in 2014. Thus, the contract was converted well before the final payments were made to Renola. La. R.S. 22:1703(A) prohibits a public adjuster from entering into a contingency fee contract with a client that is contingent on ultimate recovery. We find that because the contract was converted, the contract between Renola and WorldClaim did not

---

[6] La. R.S. 22:1703(A):

> A public adjuster may charge the insured a reasonable fee. A public adjuster shall not solicit for or enter into any contract or arrangement between an insured and a public adjuster which provides for payment of a fee to the public adjuster which is contingent upon, or calculated as a percentage of, the amount of any claim or claims paid to or on behalf of an insured by the insurer and any such contract shall be against public policy and is null and void.

violate La. R.S. 22:1703(A). As such, the trial court did not abuse its discretion in denying Louisiana Citizens' motion *in limine*.

## Jury Instruction

Louisiana Citizens argues the trial court erred in not submitting a jury instruction advising the jury of the law between a public adjuster and an insured. Louisiana Citizens maintains that the jurors should have been instructed on the applicability of La. R.S. 22:1703 and WorldClaim's financial interest in the insurance proceeds.

In addressing jury instructions, the gravity of the error dictates the applicable standard of review. *Seal v. State Farm Fire & Cas. Co.*, 2000-2375, p. 4 (La.App. 4 Cir. 3/20/02, 816 So.2d 868, 872.[7] Jury instructions are reviewed under a manifest error standard of review. *Fireman's Fund Ins. Co. v. R.S. Homes, LLC*, 2019-0621, pp. 3-4 (La.App. 4 Cir. 3/25/20), 294 So.3d 59. "Trial courts are given broad discretion in formulating jury instructions and a trial court judgment should not be reversed so long as the charge correctly states the substance of the law." *Adams v. Rhodia, Inc.*, 2007-2110, p. 6 (La. 5/21/08), 983 So.2d 798, 804. Thus, "the adequacy of the jury instruction must be determined in the light of jury instructions as a whole… ." *Adams*, 2007-2110, p. 7, 983 So.2d at 805. In the case *sub judice*, we will determine if the trial court was manifestly erroneous in omitting the jury instruction.

"A trial judge is only required to give a jury instruction which properly reflects the law that is applicable to the facts of a particular case." *Fireman's Fund Ins. Co.*, 2019-0621, p. 7, 294 So.3d at 61. The record establishes that the jury

---

[7] A *de novo* review is applicable when the jury charge is so inadequate that the jury cannot reach a verdict based on the law and the facts of the case. *Seal*, 2000-2375, p. 5, 816 So.2d at 872. In the case *sub judice*, a *de novo* review is not warranted.

7

instructions as a whole were adequate. Thirty-two jury charges were read to the jury. The charges included, but were not limited to, an explanation of the law between an insurance company and its insured; the applicable burden of proof; a recitation of the applicable insurance policy; explanation of damages; and the insured's obligation to mitigate damages. The jury instructions provided the jury with the applicable law, and Louisiana Citizens has not demonstrated that the jury instructions given were inadequate to the extent that the jury could not reach a verdict based on the law and facts of the case.

Additionally, the trial court's exclusion of the jury instruction on La. R.S. 22:1703 was consistent with its ruling on the motion *in limine* regarding the contract between Renola and WorldClaim. Thus, we find the trial court was not manifestly erroneous in not including a jury instruction regarding La. R.S. 22:1703.

## Jury Verdict

Louisiana Citizens challenges the jury verdict on three grounds: (1) the jury erred in finding that Renola satisfactorily demonstrated the damage to the property was a result of Hurricane Isaac; (2) the jury erred in finding Louisiana Citizens arbitrary and capricious by failing to pay Renola within the statutory period; and (3) the jury erred in awarding Renola lost profits.

Our Supreme Court has provided that:

> It is well-settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. *Blair v. Tynes*, 621 So.2d 591, 601 (La. 1993); *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989). To reverse a fact-finder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and that the record establishes that the finding is clearly wrong. *Mart v. Hill*,

> 505 So.2d 1120 (La. 1987). Where the jury's findings are reasonable, in light of the record viewed in its entirety, the court of appeal my not reverse. Even where the court of appeal is convinced that it would have weighed the evidence differently to reach a different result, reversal of the trial court is improper unless the trial court's ruling is manifestly erroneous, or clearly wrong. *Blair, supra.*

*Rabalais v. Nash*, 2006-0999, p. 4 (La. 3/9/07), 952 So.2d 653, 657. Applying this legal principle, we will address each in turn.

### *Satisfactory Proof of Loss*

Louisiana Citizens argues that Renola failed to establish satisfactory proof that the damage to the complex was a result of Hurricane Isaac. Additionally, Louisiana Citizens maintains that Renola failed to adequately mitigate its damages.

Satisfactory proof of loss need not be in any particular format, but must include sufficient facts that completely notify the insurer of the extent of the damages. *Dudenhefer v. Louisiana Citizens Prop. Ins. Corp.*, 2019-0387, p. 7 (La.App. 4 Cir. 9/25/19), 280 So.3d 771, 777. The record reflects that WorldClaim provided extensive details of Hurricane Isaac water damage and cost estimates for repairs. WorldClaim began its inspection of the complex on September 1, 2012. Its estimate consisted of four separate reports for each building in the complex and outlined water damage found to be a result of Hurricane Isaac. WorldClaim subsequently recommended a water remediation specialist due to the amount of water that entered the complex through the roof and siding during Hurricane Isaac.

On September 10, 2012, Emergency Services 24, Inc. (hereinafter "ES-24") performed moisture meter readings and documented the extent of the water damage throughout the complex. The ES-24 report indicated that moisture reading was completed in a majority of the units in each building, with some units being inaccessible. The report noted significant moisture in the floors, walls and ceilings

of most of the units. As such, ES-24 recommended removal of the drywall in some units; removal of a portion of sheetrock in other units; and removal of some units' baseboards due to mold. ES-24 submitted its findings and invoice to WorldClaim, who in turn submitted the damage remediation proposals to Louisiana Citizens.

On November 13, 2012, Renola retained Servpro, a water remediation company, to provide a second opinion regarding the extent of damages to the complex as a result of water intrusion. Servpro inspected the complex on November 14, 2012, concurring with ES-24's findings and determining that majority of the units had varying degrees of water damage and the complex required extensive water remediation procedures.

WorldClaim submitted (1) an invoice from ES-24 for the moisture meter reading in the amount of $31,610.00; (2) a tarp proposal in the amount of $16,350.00; (3) a demolition estimate in the amount of $188,509.07; and a water remediation dry out estimate in the amount of $485,199.32. WorldClaim subsequently submitted a "Partial-Sworn Statement in Proof of Loss" to Louisiana Citizens outlining the estimates of repairs to the complex based on its assessment of damages as of November 20, 2012. Based on the record before this Court, we find Renola presented satisfactory proof of loss to Louisiana Citizens.

In addressing Louisiana Citizens' argument that it failed to mitigate its damages, Renola asserts that it could not mitigate the damage to the complex because of Louisiana Citizens' failure to tender adequate payment. La. C.C. art. 2002 provides that "[a]n obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced." However, this duty only exists if it is reasonable under the circumstances. *Dixie*

10

*Servs., L.L.C. v. R & B Falcon Drilling USA, Inc.*, 2005-1212, 2006-1209, p. 6 (La.App. 4 Cir. 3/21/07), 955 So.2d 214, 219; s*ee also Merlin v. Fuselier Constr. Inc.*, 2000-1862, p. 9 (La.App. 5 Cir. 5/30/01), 789 So.2d 710, 716.

Jeffrey Castellaw, director of PVCA and Renola, testified that it was not reasonable to begin remediation measures on the property after Hurricane Isaac because it would have been expensive, and Louisiana Citizens had not provided adequate money in order to begin the process. Renola and Louisiana Citizens were in a constant dispute over the extent of the damage. Renola maintains that water damage was a result of wind blowing water during Hurricane Isaac, causing it to enter the walls of the buildings. Conversely, Louisiana Citizens' position is that Hurricane Isaac did not cause all of the water damage asserted by Renola. Both parties had multiple inspections of the complex completed but still disagreed on the extent of the damage.

The record reflects that WorldClaim emailed Louisiana Citizens on September 14, 2012, requesting approval to tarp the buildings in order to prevent further damage. WorldClaim advised that due to recent storms, moisture levels were elevated due to the lack of exterior sheathing and roof tiles. The adjuster for Louisiana Citizens responded on September 15, 2012, advising that he did not have the authority to allow "any repairs or mitigation" and that due to the large deductibles, "mitigation may not leave enough funds to do all the repairs." Renola's initial attempts to mitigate the damage were prevented by Louisiana Citizens' failure to provide authority to move forward with repairs or mitigation.

Based on the foregoing, a reasonable factual basis exists for the jury's findings.

### Bad Faith Penalties

"[T]he determination of whether an insurer acted in bad faith turns on the facts and circumstances of each case, because a prerequisite to any recovery under the statute is a finding that the insurer not only acted (or failed to act) but did so arbitrarily, capriciously, and without probable cause." *Maloney Cinque, L.L.C. v. Pac. Ins. Co., Ltd.*, 2011-0787, p. 12 (La.App. 4 Cir. 1/25/12), 89 So.3d 12, 22. "As this determination is largely factual, great deference is accorded to the trier of fact." *Id.* (citing *Smith v. Anderson*, 1995-2057, p. 9 (La. 9/5/96), 679 So.2d 372, 377).

Louisiana Citizens argues that Renola did not establish it acted in bad faith by failing to pay the claim within either the thirty-day or sixty-day statutory period.[8] It maintains that the claim was not timely paid because Louisiana Citizens and Renola disagreed on the scope of the loss. Thus, Louisiana Citizens asserts, the jury erred in finding it arbitrary and capricious and awarding bad faith penalties to Renola.

Louisiana Citizens began its initial inspection of the property on September 10, 2012. Louisiana Citizens did not agree with scope of the damage as asserted by Renola. After multiple inspections, Louisiana Citizens issued the following payments in November 2012: (1) $18,160.26; (2) $10,722.35; (3) $9,512.04; and (4) $10,135.59 for wind damage to the complex as a result of Hurricane Isaac.

On November 28, 2012, Louisiana Citizens rejected the partial proof of loss submitted on behalf of Renola. Louisiana Citizens retained Rimkus, engineering experts, to further inspect the property. Multiple subsequent inspections of the property continued through 2013, with different insurance adjusters representing

---

[8] *See* La. R.S. 22:1892 and La. R.S. 22:1973.

Louisiana Citizens. After further inspections Louisiana Citizens issued the following additional tenders:

> January 2013: $15,641.80, $7,543.28, $29,595.14, and $21,724.89;
>
> April 2013: $10,583.80;
>
> May 2013: $11,555.60, $585.53, and $10,397.11;
>
> October 2014: $5,911.27 and $6,406.36.

In order to obtain penalties for bad faith handling of a claim, a party must establish that: (1) the insured received satisfactory proof of loss; (2) the insurer failed to pay the claim within the applicable statutory period; and (3) the failure to pay was arbitrary, capricious and without probable cause. *Aghighi v. Louisiana Citizens Prop. Ins. Corp.*, 2012-1096, p. 4 (La.App. 4 Cir. 6/19/13), 119 So.3d 930, 933.

Having already determined that Renola established satisfactory proof of loss, we turn to the whether the insurer failed to pay the claim within the applicable statutory period. "An insurer's actions are found to be arbitrary, capricious, or without probable cause when its refusal to pay is unjustified." *Dudenhefer*, 2019-0387, p. 7, 280 So.3d at 777. It is undisputed that Louisiana Citizens did not pay the claim within the applicable statutory period. However, it maintains the claim was not paid timely because the extent of the damages were in dispute. During the initial stages of the claims process, Louisiana Citizens informed Renola that it disputed Renola's estimate of damages. Specifically regarding the water damage to the complex. The record reflects that Renola took multiple steps to demonstrate to Louisiana Citizens that there was damage to the complex as a result of water intrusion from Hurricane Isaac.

13

The jury assessed a 50% penalty against Louisiana Citizens. We find a reasonable factual basis exists for the jury to find that Louisiana Citizens' failure to pay the claim, within the applicable statutory period, was arbitrary, capricious or without probable cause.

### *Loss of Profits*

Louisiana Citizens asserts the jury erred in awarding $810,000.00 in loss of rental income to Renola because the property was losing income before Hurricane Isaac occurred. "As a general rule 'damages for loss of profits may not be based on speculation and conjecture; however, such damages need be proven only within reasonable certainty.'" *Breton Sound Oyster Co. LLC v. Stiel Ins. Co. of New Orleans Inc.*, 2017-0955, p. 14 (La.App. 4 Cir. 12/12/18), 299 So.3d 80, 90 (quoting *Maloney*, 2011-0787, p. 18, 89 So.3d at 25). "Broad latitude is given in proving lost profits because this element of damages is often difficult to prove and mathematical certainty or precision is not required." *Id*.

At the time of Hurricane Isaac, Renola's property consisted of 13 rental units. Renola submits that it lost rental income because St. Bernard Parish condemned the property, due to the saturation of the electrical system, and the property was uninhabitable and no longer rentable. Richard Murphy, Renola's real estate appraisal expert, testified that he conducted an "as-is" appraisal of the property in 2014 and determined that the complex was valued at $555,000.00. Mr. Murphy stated that he also conducted a "retrospective" appraisal of the property as if it were in pre-Hurricane Isaac condition. Utilizing a 2010 valuation date, Mr. Murphy opined that the property, in good condition, would be worth $3,280,000.00. In calculating this appraisal, Mr. Murphy testified that he used

comparable apartment sales that were in good condition and an income approach/valuation method because the units in 2010 were rentable.

Mr. Murphy further testified that he conducted an appraisal in 2019 to determine the value of the property if it had been rebuilt after Hurricane Isaac and re-entered into commerce. He used an income approach to evaluate the property by determining rental amounts for each unit, considering comparable apartment complexes and deducting necessary expenses. Utilizing this valuation method, Mr. Murphy determined the income value of the property was $3,830,000.00.[9]

Mr. Murphy also conducted an analysis of the potential annual net earnings of the complex based on the number of rentable units. He opined that, based on a ninety percent occupancy rate, Renola's net rental income totaled $354,395.00 annually. Approximately two years elapsed between the filing of Renola's initial claim and the final remittance of payment by Louisiana Citizens. Thus, the jury's award of $810,000.00 is supported by the evidence and will not be disturbed upon review.

For the aforementioned reasons, we find a reasonable basis exists for the jury's findings.

### PVCA, Renola and Pacific West's Answer to Appeal

Through their answer to Louisiana Citizens' appeal, Appellees, PVCA, Renola and Pacific West, seek review of the jury's award for additional property damage/total loss of the buildings and the 50% bad faith penalty. Appellees also seek attorney's fees and costs associated with the current appeal.

---

[9] He also conducted an appraisal in 2017 to determine the value of the land, which he determined was $180,000.00.

15

## *Additional Property Damage and Bad Faith Award*

Appellees maintain the jury erred in not awarding additional property damage despite awarding loss of rental income. They argue it is inconsistent for the jury to award $810,000.00 for loss of rental income and award nothing for additional property damage/total loss of the buildings. Appellees also assert that the jury erred in only penalizing Louisiana Citizens 50% for failing to timely adjust the claim.

A damages award will only be disturbed on appeal where there is a clear abuse of the trier of fact's discretion. *Waingwright v. Fontenot*, 2000-0492, p. 6 (La. 10/17/00), 774 So.2d 70, 74. In the case *sub judice*, we find no abuse of discretion in the jury's failure to award additional property damages. The record reflects sufficient evidence for the jury to determine that the compensable damage to Renola was the loss of rental income. The jury determined that Louisiana Citizens failed to timely tender $1,143,184.00 to Renola after presenting satisfactory proof of loss. Thus, the jury awarded actual damages for property loss. Specifically, the question posed to the jury was "[w]hat additional damages did the Plaintiffs suffer as a result of Citizens Insurance's breach of the duty of good faith and fair dealing?" The jury concluded that the "additional damage" was the actual loss of rental income. Based on the record before this Court, we find the jury did not abuse its broad discretion in awarding loss of rental income for additional damages. Thus, we find no inconsistency between the jury's refusal to award additional property damages and its award for loss of rental income

Likewise, we find a reasonable factual basis exists for the jury's bad faith penalty award. La. R.S. 22:1973(C) allows for a penalty award of the greater of

16

two times the damages sustained or $5,000.00. The 50% bad faith penalty award was within the jury's discretion and we find no error in the jury's finding.

## *Attorney's Fees*

Appellees request attorney's fees and costs associated with defending this appeal. It is well settled that,

> [A]ttorney fees [are] usually awarded where a party who was awarded attorney fees by the trial court is forced to and successfully defends an appeal. The award of additional attorney fees is to keep the appellate judgment consistent with the underlying judgment. To determine the amount of attorney fees, factors that are considered include "the skill exercised by the attorney and the time and work required on appeal."

*Maldonado v. Cannizzaro*, 2018-0177, p. 14 (La.App. 4 Cir. 10/10/18), 257 So.3d 733, 743, *writ denied*, 2018-1749 (La. 1/8/19), 260 So.3d 591 (quoting *State of Louisiana Dept. of Transp. & Develop. v. Monteleone*, 2011-1013, p. 34 (La.App. 5 Cir. 11/13/12), 106 So.3d 153, 174); *See also Gloria's Ranch, L.L.C. v. Tauren Expl., Inc.*, 2017-1518, 2017-1519, 2017-1522, p. 23 (La. 6/27/18), 252 So.3d 431, 446.

Although Appellees have successfully defended this appeal, we find the record before this Court insufficient to determine an appropriate amount of attorney's fees. Additionally, the record reflects that on November 13, 2019, the parties stipulated that all matters related to attorney's fees and costs would be reserved to a post-trial contradictory hearing. Accordingly, we decline to award attorney's fees for this appeal.

## DECREE

Accordingly, we affirm the judgment of the trial court and deny the relief requested in Appellees' answer to appeal.

**AFFIRMED**